IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | | Chapter 11 |
| § | | |
| **TMT PROCUREMENT CORP.,** *et al.*,[1] § | | Case No. 13-33763 |
| § | | |
| § | | |
| **DEBTORS.** § | | Jointly Administered |

### EXPEDITED MOTION TO APPROVE SHARE ESCROW AGREEMENT

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SERVE A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**AN EXPEDITED HEARING ON AUGUST 21, 2013 AT 1:30 PM HAS BEEN REQUESTED, WITH AN OBJECTION DEADLINE OF AUGUST 16, 2013 AT 4:00 PM. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

---

[1] The Debtors in these chapter 11 cases are: (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Inc.; (10) A Ladybug Corporation; (11) C Ladybug Corporation; (12) D Ladybug Corporation; (13) A Handy Corporation; (14) B Handy Corporation; (15) C Handy Corporation; (16) B Max Corporation; (17) New Flagship Investment Co., Ltd; (18) RoRo Line Corporation; (19) Ugly Duckling Holding Corporation; (20) Great Elephant Corporation; and (21) TMT Procurement Corporation.

TMT Procurement Corp., *et al.*, the above-captioned debtors and debtors in possession (together, the "Debtors"), hereby file this expedited motion for an order approving the Share Escrow Agreement (the "Share Escrow Agreement") attached as Exhibit A (the "Motion"). In support of this Motion, the Debtors would show as follows:

### I. RELIEF REQUESTED AND BASIS THEREFOR

**A.   The Court's Requirements**

By Order dated July 23, 2013 (Dkt. No. 134, the "Good Faith Order") this Court required, *inter alia*, that the Debtors provide to the Estates the Good Faith Property (as defined in the Good Faith Order), based on the following criteria (the ¶ references are to the Good Faith Order):

1. The Good Faith Property must consist of non-estate property with a fair market value of $40,750,000. ¶ 4.

2. The Good Faith Property must be provided to the Estates, jointly, no later than August 20, 2013. ¶ 4.A.

3. The Debtors' must file a proposed form of Order (the "Good Faith Property Order") no later than August 6, 2013. ¶ 4.B.

4. The Good Faith Property Order must establish the Court's control over the Good Faith Property. ¶ 4.B.

5. If the Good Faith Property does not comprise cash, it must include at least 25,000,000 shares of the common stock of Vantage Drilling Company ("Vantage Shares"). ¶ 4.C.

6. If the Court determines that the initial Good Faith Property has a fair market value of less than $40,750,000, the Debtors will have an additional 30 days in which to supplement the Good Faith Property. ¶ 4.D.

7. As set forth in ¶ E, the Good Faith Property "will constitute a pool of assets to:

#4345776.2

-2-

      (i)      ensure compliance with court orders;

      (ii)      provide a fund for payment of any sanctions ordered by the Court against one or more Debtors or their principals, including any daily coercive sanctions ordered by this Court;

      (iii)      serve as collateral for a working capital loan to one or more Debtors, if ordered by the Court;

      (iv)      satisfy any amounts arising under § 507(b) of the Bankruptcy Code, including without limitation any failure of adequate protection from the use of cash collateral;

      (v)      collateralize an advance of any amounts due under paragraph 3 of this Order; and

      (vi)      serve any other purpose as may be ordered by the Court from time-to-time.

8.      The Good Faith Property may be withdrawn or applied only after notice and hearing." ¶ F.

**B.      The Share Escrow Agreement**

Following the above numbering scheme, the Share Escrow Agreement complies with the Good Faith Order as follows (the § citations are to the Share Escrow Agreement):

1.      The Good Faith Property consists of 25,000,000 Vantage Shares, § 3.02(a), provided by a non-estate party (F3 Capital), § 1.01(a), with a fair market value of not less than $40,750,000 (evidence to be presented at the hearing on August 21, 2013 (the "Good Faith Property Hearing")).

2.      The Good Faith Property will be provided to the Estates, jointly, no later than August 20, 2013 (evidence to be presented at the Good Faith Property Hearing).[2]

---

[2] As of the filing of this Motion, Bracewell has physical possession of 17,750,000 Vantage Shares. The balance of Vantage Shares is expected to be physically delivered to Bracewell by August 9, 2013, and in no event later than August 20, 2013, in compliance with the Good Faith Order.

3. The Debtors are filing the Good Faith Property Order no later than August 6, 2013, as <u>Exhibit B</u> to this Motion.

4. The Good Faith Property Order, which incorporates the Share Escrow Agreement, establishes the Court's control over the Good Faith Property. §§ 3.03(a) (Escrowed Shares are being held *in custodia legis*) & 4.08(a) ("In no event shall the Escrow Agent dispose of, transfer, release or otherwise transact in respect of any of the Escrowed Shares except pursuant to an order of the Court after notice to the Notice Persons and a hearing...."). Note that the Share Escrow Agreement employs the mechanic of an Escrow Agent in order to ensure that (i) the Escrowed Shares are placed in a secure, fire-proof safe, (ii) the Escrowed Shares are insured against loss, theft and destruction, and (iii) additional Vantage Shares can easily be deposited into, or withdrawn from, the Escrow Account if so ordered by the Court (see ¶ B.12 below).[3]

5. The Good Faith Property will, at all times, include at least 25,000,000 Vantage Shares. §§ 6.01(a) & (b).

6. The Debtors acknowledge that, if the Court determines that the initial Good Faith Property has a fair market value of less than $40,750,000, the Debtors will have no more than an additional 30 days in which to supplement the Good Faith Property.

7. The Good Faith Property constitutes a pool of assets to:

    (i)    ensure compliance with court orders, § 4.06;

---

[3] Bracewell & Giuliani LLP has agreed to serve as the Escrow Agent due both to (i) the Estates' current inability to pay the fees and expenses of a third party escrow agent and its counsel and (ii) the lack of sufficient time to enable a third party escrow agent's counsel, once payment arrangements are confirmed, to review and comment on the Share Escrow Agreement. If there is a preference that a third party escrow agent be utilized and assurance of a source of funding for the third party and its counsel, the Share Escrow Agreement provides that (A) Bracewell can resign as Escrow Agent pursuant to § 5.06(a) and/or (B) Bracewell can be replaced as Escrow Agent pursuant to § 5.06(b) (including on the Court's own motion), and (C) such resignation or replacement will take effect upon the acceptance of appointment by the successor Escrow Agent.

(ii) provide a fund for payment of any sanctions ordered by the Court against one or more Debtors or their principals, including any daily coercive sanctions ordered by this Court, § 4.06;

(iii) serve as collateral for a working capital loan to one or more Debtors, if ordered by the Court, § 4.03;

(iv) satisfy any amounts arising under § 507(b) of the Bankruptcy Code, including without limitation any failure of adequate protection from the use of cash collateral, § 4.04;

(v) collateralize an advance of any amounts due under paragraph 3 of the Good Faith Property Order, § 4.06; and,

(vi) serve any other purpose as may be ordered by the Court from time-to-time, § 4.06.[4]

8. The Good Faith Property may be withdrawn or applied only after notice and hearing. §§ 3.02(d), 3.03(c); 3.04 & 4.08(a).

In addition to satisfying the Court's requirements, the Share Escrow Agreement provides the following additional protections (the § citations are to the Share Escrow Agreement):

9. F3 Capital and Su represent and warrant that each of them has the authority to enter into the Share Escrow Agreement, its execution and performance does not violate any law or breach any material contract, its execution and delivery does not require any regulatory filings, consents or notices, and is its legally valid and binding obligation. The foregoing therefore includes representations and warranties from F3 Capital and Su that they can enter into the Share Escrow Agreement without violating any requirements of the separate litigation by Vantage Drilling Company against Su and without violating any securities laws. §§ 2.01, 2.02, 2.03 & 3.01(e).

---

[4] The Share Escrow Agreement also proposes a first priority for the Escrow Agent's fees and indemnification, § 4.02, and a fourth priority as a "backstop" for allowed professional fees in the event all other sources of payment are exhausted, § 4.05.

10. F3 Capital, as the owner of the Escrowed Shares, both represents that it has no current intention to commence insolvency proceeds and covenants that, should that change, it will only file such proceedings in this Court. § 2.02(e). Su makes the same representation and covenant for himself. § 2.03(d).

11. Notwithstanding the false testimony (at the Good Faith Hearing) of Vantage Drilling Company's CEO that the Vantage Shares owned by F3 Capital have not been registered, F3 Capital expressly represents that its Vantage Shares have, in fact, been registered. §§ 3.01(c) & 2.02(c).

12. Although the Court required only that the fair market value of the Escrowed Shares needs to be at least $40,750,000 as of the approval date, the Share Escrow Agreement provides a mandatory mechanism for F3 Capital to escrow additional Vantage Shares in the event the market price for Vantage Shares drops below a stated level. § 3.02(c). While there is a corollary provision permitting the return to F3 Capital of "excess" shares if the market price for Vantage Shares moves above a stated level, such return can only be achieved via a Court order after notice and a hearing. § 3.02(d).

13. While the Good Faith Property Order and the Share Escrow Agreement intend to cover all possible scenarios, the Share Escrow Agreement permits the Court to enter additional orders "as the Court deems just" after notice and a hearing in the event of "unanticipated circumstances." § 3.04; see also § 6.09.

14. If any disposition of the Escrowed Shares is required other than their return to F3 Capital, after notice and a hearing "the Court shall make the final determination in its discretion." § 4.08(b).

15. F3 Capital and Su agree to take all commercially reasonable steps to effectuate any disposition ordered by the Court. § 4.08(c).

16. The Share Escrow Agreement cannot be modified, amended or supplemented without Court order. § 6.03.

17. F3 Capital and Su irrevocably submit to the exclusive jurisdiction of this Court with respect to any matters under or arising out of or in connection with the Share Escrow Agreement. § 6.05.

## II.  EXPEDITED CONSIDERATION REQUIRED

18. The Debtors request expedited consideration of this Motion. The Court has required that the Good Faith Property be delivered by August 20, 2013, and there is already a hearing scheduled for August 21, 2013 at 1:30 pm.

## III.  PRAYER

WHEREFORE, the Debtors request that this Court enter an Order, in substantially the form attached hereto, approving and incorporating the Share Escrow Agreement, and granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By: */s/ William A. (Trey) Wood III*
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

-and-

-8-

>Evan Flaschen
>(*Pro hac vice* admission granted)
>Evan.Flaschen@bgllp.com
>Goodwin Square
>225 Asylum Street, Suite 2600
>Hartford, CT 06103
>Telephone: (860) 947-9000
>Facsimile: (860) 246-3201
>
>-and-
>
>Robert G. Burns
>(*Pro hac vice* admission granted)
>Robert.Burns@bgllp.com
>1251 Avenue of Americas, 49th Floor
>New York, New York 10020-1104
>Telephone: (212) 508-6100
>Facsimile: (800) 404-3970
>
>**PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 6, 2013, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, and/or by electronic mail as indicated.

> */s/ Jason G. Cohen*
>  Jason G. Cohen