

**ENTERED**
**08/26/2013**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| TMT PROCUREMENT CORPORATION | § | CASE NO: 13-33763 |
| | § | |
| A WHALE CORPORATION | § | CASE NO: 13-33741 |
| | § | |
| B WHALE CORPORATION | § | CASE NO: 13-33742 |
| | § | |
| C WHALE CORPORATION | § | CASE NO: 13-33743 |
| | § | |
| D WHALE CORPORATION | § | CASE NO: 13-33744 |
| | § | |
| E WHALE CORPORATION | § | CASE NO: 13-33745 |
| | § | |
| G WHALE CORPORATION | § | CASE NO: 13-33746 |
| | § | |
| H WHALE CORPORATION | § | CASE NO: 13-33747 |
| | § | |
| A DUCKLING CORPORATION | § | CASE NO: 13-33748 |
| | § | |
| F ELEPHANT INC. | § | CASE NO: 13-33750 |
| | § | |
| A LADYBUG CORPORATION | § | CASE NO: 13-33751 |
| | § | |
| C LADYBUG CORPORATION | § | CASE NO: 13-33752 |
| | § | |
| D LADYBUG CORPORATION | § | CASE NO: 13-33754 |
| | § | |
| A HANDY CORPORATION | § | CASE NO: 13-33755 |
| | § | |
| B HANDY CORPORATION | § | CASE NO: 13-33756 |
| | § | |
| C HANDY CORPORATION | § | CASE NO: 13-33757 |
| | § | |
| B MAX CORPORATION | § | CASE NO: 13-33758 |
| | § | |
| NEW FLAGSHIP INVESTMENT CO LTD | § | CASE NO: 13-33759 |
| | § | |
| RORO LINE CORPORATION | § | CASE NO: 13-33760 |
| | § | |
| UGLY DUCKLING HOLDING CORPORATION | § § § | CASE NO: 13-33761 |

**GREAT ELEPHANT CORPORATION** § **CASE NO: 13-33762**
§ **Jointly Administered Order**
**Debtor(s)** §
§ **CHAPTER 11**

## ORDER REGARDING SHARES

The Court orders:

1. Share certificates representing 25,107,142 shares of Vantage Drilling Company have been deposited with the Clerk of the Court. The Clerk will retain the share certificates in custodia legis, in the Court's safekeeping vault.

2. The share certificates will only be released by further Court order. Any party in interest, with a claim that is a Protected Claim, may seek an order of disposition of all or some of the shares. The shares will only be sold pursuant to a Court order.

3. While held in custodia legis, the shares may not be sold, hypothecated, pledged, traded, exchanged, or disposed of except on further order of this Court.

4. Claims that are Protected Claims are:

   A. Amounts ordered by the Court to assure compliance with the Court's orders, including without limitation any coercive sanctions orders issued against one or more Debtors.

   B. Claims arising under any loan made pursuant to § 364 of the Bankruptcy Code, but only to the extent that an order issued pursuant to § 364 so provides.

   C. Claims of the type set forth in § 507(b) of the Bankruptcy Code, including without limitation any failure of adequate protection from the use of cash collateral.

   D. Amounts, if any, required to be paid pursuant to paragraph 3 of the Courts July 23, 2013 Order issued at ECF #134.

   E. Any other purpose ordered from time-to-time by the Court after notice and hearing.

   F. Protected Claims may not be asserted by entities in violation of 11 U.S.C. § 362(a). The foregoing does not preclude the assertion of a Protected Claim by an entity that was previously in violation of 11 U.S.C § 362(a), without regard to the date on which such Protected Claim accrued.

5. If the proceeds from the disposition of the shares are inadequate to pay all amounts due under paragraph 4 of this Order:

> A. The proceeds shall first be utilized to pay Protected Claims defined in paragraphs 4(C) and 4(D) of this Order, pro rata. Provided, shares that are segregated shares under any order pledging segregated shares (as set forth in paragraph 5(C)) to secure a § 364 loan or otherwise will not be subject to this paragraph.
>
> B. The proceeds shall next be utilized to pay Protected Claims defined in paragraph 4(B) of this Order.
>
> C. The Court may order a division of the shares such that the Protected Claims defined in paragraphs 4(C) and 4(D) will be satisfied solely out of segregated shares. The purpose of such segregation will be to allow Protected Claims defined in paragraph 4(B) to have a first priority against all unsegregated shares.
>
> D. All other rights in proceeds, which will be subordinate to the rights contained in paragraphs 5(A), 5(B), and 5(C) will be determined by separate order.

6. F3 Capital, the owner of the share certificates, will have claims arising under § 364(b):

> A. The claims will be on a debtor by debtor basis. Each debtor will be liable to F3 Capital only for the proceeds used to satisfy that debtor's obligations under this order.
>
> B. No debtor will be liable to F3 Capital on account of any decline in the value of the shares.
>
> C. No fees will be due to F3 Capital; provided, F3 Capital may recover its legal fees from any debtor that does not promptly pay F3 Capital pursuant to any Court order mandating payment to F3 Capital.
>
> D. For the purposes of clarity, F3 Capital will not have claims arising under § 364(c) or § 364(d) on account of the events set forth in this Order. Should a subsequent event, with new consideration from F3 not set forth in this Order, arise (such as the making of a Court approved § 364 loan by F3 Capital), a future order may grant § 364(c) or § 364(d) protections.
>
> E. Notwithstanding the provisions of this paragraph, F3 Capital will not have a § 364(b) claim for any amounts paid from the proceeds of the sale of the shares for the purpose of paying sanctions ordered by this Court, for which the Court does not grant a § 364(b) claim.

  F. Notwithstanding the provisions of this paragraph, the Court will, after notice and hearing, determine F3's rights with respect to funds that are used to satisfy the (approximate) $740,000.00 violation of the Court's cash collateral order. This provision does not modify any prior orders or findings of the Court.

  G. F3's § 364(b) claim will be subordinate to all other claims under § 503(b).

7. Voting rights in the shares are unaffected by this Order. Notwithstanding the previous sentence, F3 Capital shall disclose in a filing with this Court any actions that it may take with respect to the shares (including without limitation any voting of the shares), with the disclosure being made (i) promptly; and (ii) in no event less than 7 days before the action is taken. Parties-in-interest may seek emergency relief with respect to any such actions.

8. By entry of this Order, F3 Capital transfers to the Estates, jointly and severally, all of its interests in any chose of action arising against Vantage Drilling, its officers, agents or directors (the "Vantage Parties"):

  A. If such chose in action is based in whole or in part on actions or omissions of the Vantage Parties arising on or after August 21, 2013; and

  B. Those actions or omissions were wrongful, subject one of the Vantage Parties to liability, and resulted in:

    (i) an impairment of the marketability of any or all of the shares that are the subject of this Order; or

    (ii) a reduction in the trading price of the shares that are the subject of this Order; or

    (iii) a reduction in the value of the shares that are the subject of this Order.

  C. This order neither creates liability by any person nor precludes the assertion of defenses by any person to a cause of action that may be asserted.

The administration of any such chose of action will be determined by subsequent order, after notice and hearing. Any proceeds from the chose in action shall be used as additional value available for the purposes of this Order. Any proceeds that exceed the amounts required to be expended from the property deposited pursuant to this Order whether by this Order or by subsequent Order will be paid to F3 Capital upon the termination of this Order. This Order will only be terminated after notice and hearing and after its purposes are satisfied.

This provision does not create subject matter jurisdiction over any dispute. Subject matter jurisdiction will be decided by a court of competent jurisdiction.

9. Not later than September 20, 2013 at noon, F3 Capital must deposit an additional 900,000 shares with the Clerk. The additional shares will be subject to the same terms and requirements as the 25,107,142 shares.

10. F3 must file a statement unconditionally accepting or rejecting the terms of this Order.

> A. If the statement unconditionally accepts the conditions, the Clerk will retain the shares that have been deposited with the Clerk.
>
> B. If the statement rejects the conditions, the Clerk will return the shares that have been deposited with the Clerk and these cases will be dismissed.
>
> C. The statement must be filed not later than 5:00 p.m. on August 27, 2013.

SIGNED **August 26, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE