IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| TMT PROCUREMENT CORPORATION, et al.,[1] | § § § § | Civil Action No.: 13-2301 Bankr. Case No.: 13-33763 |
| Debtors. | § § | (Jointly Administered) |

**EMERGENCY MOTION TO SCHEDULE HEARING ON EMERGENCY MOTION OF MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD., PURSUANT TO 11 U.S.C. §§ 105(A) AND 362(D) FOR ENTRY OF ORDER GRANTING RELIEF FROM AUTOMATIC STAY (*M/V A LADYBUG* ONLY)**

**NOTICE UNDER BLR 9013-1(b) AND 9013-1(i)**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY

---

[1] The Debtors in these Chapter 11 cases are: (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Inc.; (10) A Ladybug Corporation; (11) C Ladybug Corporation; (12) D Ladybug Corporation; (13) A Handy Corporation; (14) B Handy Corporation; (15) C Handy Corporation; (16) B Max Corporation; (17) New Flagship Investment Co., Ltd; (18) RoRo Line Corporation; (19) Ugly Duckling Holding Corporation; (20) Great Elephant Corporation; and (21) TMT Procurement Corporation.

CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE LYNN N. HUGHES, UNITED STATES DISTRICT JUDGE:

1.  Mega International Commercial Bank Co., Ltd. ("**Mega Bank**"), through its undersigned counsel, hereby files this emergency motion (the "**Emergency Motion**") for entry of an order rescheduling a hearing on the *Emergency Motion of Mega International Commercial Bank Co., Ltd., Pursuant to 11 U.S.C. §§ 105(a) and 362(d) for Entry of Order Granting Relief from Automatic Stay* [Bankr. Dkt. No. 309] (the "**Motion for Relief**"), with respect to the *M/V A Ladybug* only, for a date and time on or before Tuesday, September 24, 2013.

## SUMMARY OF MOTION

2.  In the past three months, the Debtors have exhibited an utter lack of care and neglect for the *M/V A Ladybug* (the "**Vessel**") and its crew, endangering both, ***even while this bankruptcy case has been pending before the Courts in the Southern District of Texas***. Putting aside Mega Bank's and the other Taiwanese banks' contentions that (i) the Debtors' lack of sufficient ties to the United States to warrant these Cases being filed here and (ii) such filings were in bad faith, the Owner/Debtor have refused to put this Vessel in any kind of service or charter to earn revenue and have completely abandoned their duties and obligations to protect the assets of this estate because they refuse to provide or are deliberately indifferent to the lack of bunker fuel necessary for the *M/V A Ladybug* – a massive 232 meter long and thirty-two meter wide ship only 3 years old – to safely and securely operate its motors and control its positioning in and about the shipping lanes around the active port of Malta.[2] As a direct result of Debtors'

---

[2] Attached as Exhibit A is an undated picture of the *M/V A Ladybug*. See also A LADYBUG: Ship Photos, http://www.marinetraffic.com/ais/showallphotos.aspx?imo=9441867#top_photo (last visited Sept. 20, 2013).

(or their affiliates') refusal to place the Vessel in active service and failure to provide funding for these necessary bunkers – funding we know the affiliates possess due to F3 Capital's use of its Vantage shares and Terraceview Holdings' purchase of A Ladybug's insurance to protect Debtors' alleged equity in the Vessel – the Vessel has in essence been intentionally set adrift requiring expensive salvage operations on two separate occasions. The Vessel's captain called, on an emergency basis, for a salvor to protect the Vessel, which was adrift once around August 10th and once again on or about September 18th. These actions indisputably harm the estate and Mega Bank's interests in the Vessel. Indeed, this Vessel has been arrested post-petition by parties and claimants (not by Mega Bank), confirming the Debtors' lack of care of the *M/V A Ladybug*.

3. The Debtors' conduct has resulted in extremely expensive salvage operations being demanded which, on a ship of this size, require emergency towing and significant tug-boat-control over the Vessel for several days and which will continue. There is no end in sight unless this Court grants the requested relief. Currently, the Harbor Master at Malta has determined management of the Vessel has been so lacking and unsafe it will not allow the Vessel to be anchored in port by itself and it cannot be berthed. The Harbor Master informs Mega Bank that it is considering requiring the Vessel be towed to a different port other than Malta. As if the salvage operations were not expensive enough, this would dramatically increase the burdens on the A Ladybug that must be repaid. Currently, the *M/V A Ladybug* is secured by multiple tug boats that continuously position the Vessel, again while substantial expenses further accrue unnecessarily. These are not dischargeable pre-petition unsecured claims; rather, the two salvage operations ***occurred post-petition*** and will result in claims for multiple millions of dollars that likely prime and come before the First Mortgage held by Mega Bank in the *M/V A Ladybug*. The

harm to Mega Bank's interests is continuing and the condition of the Vessel is further deteriorating, necessitating this Court take action. Simply put, Mega Bank must be permitted to exercise any and all of its remedies to protect its interest in the Vessel, and the automatic stay must be lifted to permit Mega Bank to pursue its rights which will likely result in control and management of the Vessel ending up with a more responsible party.

## MOTION

4. The Debtors have neglected the *M/V A Ladybug* and its crew for too long, and, given recent developments, have once again left the Vessel and its crew adrift off the coast of Malta and seriously endangered the ship, the welfare of the crew and other vessels. In the period these Cases have been on file, the Debtors have not undertaken to provide any protection, security or care for the *M/V A Ladybug* and, instead, continue to harm and jeopardize Mega Bank's rights in the vessel. We are three months into U.S. bankruptcy protection, yet the Debtors (in particular Debtor A Ladybug Corporation) have taken no steps to secure cash to pay for the most basic operating expenses in respect of the Vessel, such as bunkers, insurance, crew wages, and other necessities, such as stores and provisions for the crew. In fact, the Vessel had been under dire circumstances, sitting idly outside the territorial waters of Malta and awaiting supplies and bunkers notwithstanding repeated demands, even before the commencement of these Chapter 11 Cases. Because the owners and managers had failed to respond to such demands, the Master of the Vessel implored upon Transport Malta, the Maltese national maritime administration, for emergency assistance. On or about July 29, 2013, Transport Malta supplied the Vessel with emergency supplies and sufficient bunkers to run the Vessel's generators and emergency equipment.

5. The Master of the Vessel also requested Transport Malta for permission to enter Maltese territorial waters. On or about August 9, 2013, Transport Malta granted such request

and allowed the Vessel to anchor at an anchorage area within recognized Maltese territorial waters.

6. In the meantime, however, the Vessel had again depleted provisions and fuel. We believe the Vessel's requests for fuel and provisions were ignored or rejected by the affiliated non-Debtor management companies that oversaw such operations. On or about August 10, 2013, the sea conditions were rough and the Vessel began to drag her anchors, effectively being set adrift. This proved to be a very dangerous situation: there were, and remain, several other vessels at the anchorage area, and the Vessel threatened such other vessels by dragging her anchors within close proximity, out of control and left to the elements. As a result, the Master of the Vessel communicated a "*May Day*" signal requesting assistance. He contacted the Harbor Master requesting the assistance of suitable tugs that could secure the Vessel and assist in controlling the situation. Mega Tugs Salvage and Towage S.A. ("**Mega Tugs**"), a Greek company (and unrelated to Mega Bank), signed a Lloyds Open Form ("**LOF**") on the same day with the Master of the Vessel. Mega Tugs rendered necessary assistance to the Vessel.[3]

7. The Debtors' continuing negligence led to the intervention of the International Transport Workers' Federation (the "**ITF**") to act on behalf of the master and the crew, and, on

---

[3] After execution of an LOF and following the salvage operations, Mega Tugs and any other salvor employed to assist the Vessel will be eligible to obtain a claim (called "an award") for payment of their claims. Pursuant to the LOF, the matter will be referred to the Lloyds Arbitrators, who will hear submissions from both sides and who will publish an award with the figure due to the salvors. The award will be calculated by taking into account a number of factors and criteria, including, without limitation, the dangers involved in securing the vessel, the danger to the vessel itself, the danger to the tugs that participated in the rescue, the circumstances and conditions surrounding the adrift vessel, the efforts of the tug, time expended, and expenses involved. Needless to say, the Vessel very likely faces a substantial award in favor of its salvors. The fact that Debtors learned nothing and a second salvage operation of massive and ongoing expense was required should be as deeply troubling to this Court as it is to Mega Bank.

or about August 14, 2013, the arrest of the Vessel in Malta.[4] Transport Malta, the Maltese national maritime administration, also arrested the Vessel on or about August 27, 2013, after incurring considerable fees and expenses in connection with the provision of emergency services and supplies needed to avert catastrophe when the Vessel was set adrift.

8. Apparently, no lessons were learned. The Debtors' continuing neglect and refusal to provide bunkers of fuel has led to a second salvage operation within the last week. The Debtors, once again, ignored the needs of the Vessel and allowed it to deplete its bunkers without re-supply. Currents, the water and perhaps rough seas caused the Vessel to drag its anchors on, at least, a second occasion, as recently as Wednesday, September 18, 2013, leading to damage to the anchors and their chains. Given the unsafe conditions and lack of control over the Vessel, the Master of the Vessel sought additional salvage assistance at great expense to reposition the Vessel not only for its safety but also for the safety of all nearby vessels. Attached as Exhibit B is a copy of the Lloyd's Standard Form of Salvage Agreement signed by Mega Tugs Salvage and Towage S.A. (unrelated to Mega Bank) and the captain of the Vessel. The Harbor Master requires the tugs to stay with the Vessel and assist the control of the Vessel, at tremendous expense, as of the date of this filing.

9. Concerned for safety due to the size of such an uncontrolled Vessel, the Harbor Master informs Mega Bank that it is preparing to have the Vessel towed from Malta to Greece or some other port, perhaps as early as Tuesday, September 24, 2013. Such an operation would increase claims against the Vessel exponentially and must be avoided at all costs. In any event,

---

[4] The ITF is a federation of transport trade unions, comprising 708 transport trade unions in over 150 countries. The ITF also assists seafarers, and, today, over 600,000 seafarers are members of ITF affiliated unions. The ITF is constantly striving to improve working conditions for seafarers and fights for more international regulation to protect seafarers' rights. The ITF seeks to help all crew members, regardless of their nationality or their ship's flag.

the Vessel is in immediate need of bunkers and repairs to its anchors, neither of which the Debtors are able to procure, as evidenced by the Debtors' most recent three-week budget, attached hereto as Exhibit C, which demonstrates the Debtors' inability to fund any operating expenses whatsoever through the week ending October 11, 2013.[5] Mega Bank would like to lift the stay to pursue arrest of the Vessel which, in those conditions, would enable it to perhaps provide the funding to procure bunkers, supplies and other necessities at least until the Arrest Sale could be conducted and a new owner takes over.

10. On August 23, 2013, Mega Bank filed its Motion for Relief.[6] Mega Bank filed its Motion for Relief for all of the foregoing reasons and because, among other things, after two months of protection under Chapter 11 of the Bankruptcy Code, the Debtors could not demonstrate any ability to provide adequate protection for Mega Bank's interests in the Vessel. By the filing of the Motion for Relief, it was apparent that the Debtors had no business plan for the Vessel, could not procure financing necessary to maintain the Vessel, and could not protect the Vessel from the Debtors themselves or from postpetition arrests by foreign third parties.

11. The Motion for Relief was originally presented as an "emergency" motion, but Mega Bank has agreed to lesser forms of relief in the interim in a spirit of cooperation, while reserving its rights to seek the relief requested herein. Needless to say, with the passage of time, the Debtors have had more than sufficient notice to proceed with an evidentiary hearing on a non-emergency basis. In fact, after a series of preliminary hearings, where Mega Bank and the Debtors were able to agree on certain limited relief, the Motion for Relief was scheduled for an

---

[5] Although the three-week budget references $0.00 of "Operating Disbursements," the Vessel of course continues to incur substantial necessary operating expenses.

[6] Mega Bank hereby incorporates by reference all factual allegations and legal arguments in the Motion for Relief with respect to the Vessel. A copy of the Motion for Relief is attached hereto as Exhibit D.

7

evidentiary hearing on September 17, 2013, as to the *M/V A Ladybug* and the *M/V A Duckling* only. The Bankruptcy Court, however, canceled that hearing as a result of this Court's order withdrawing the reference, but it is evident that relief is critically necessary.

12. To date, after three months of protection under Chapter 11 of the Bankruptcy Code, the situation has deteriorated precipitously. The Debtors still cannot demonstrate their ability to operate as a going concern (to the extent passive, shipowning SPVs could even be thought of as "going concern" businesses) and still cannot meet their obligations to adequately protect Mega Bank's interests and rights in its collateral, namely the Vessel. The salvage operation of this week on the Vessel and the threat of being towed to Greece – all of which will costs millions of dollars and impair Mega Bank's collateral interest in the Vessel, not to mention the self-help remedies unpaid crew have been known over the years to exercise on vessels out of frustration for lack of payment of wages which they need to support their families – clearly demonstrate the dire situation and the need for an immediate evidentiary hearing on the Motion for Relief, where the Debtors bear the burden of proof on adequate protection.

13. Mega Bank should no longer be stayed or prejudiced from exercising its rights against the Vessel. By exercising its rights against the Vessel, Mega Bank will be in a position to preserve and maximize the value of the Vessel and achieve a sale of the Vessel with the oversight of an admiralty court of appropriate jurisdiction, thereby transferring ownership to a prudent shipowner—a shipowner that actually can fund basic operating expenses and employ the Vessel in gainful economic activity. The Debtors clearly cannot save the Vessel from themselves or from foreign creditors, and Mega Bank's interests in the *M/V A Ladybug* cannot await relief from the automatic stay any longer. For these and other reasons, Mega Bank

respectfully submits that this Court should reschedule the hearing on the Motion for Relief with respect to this Vessel for a date and time no later than Tuesday, September 24, 2013.

\* \* \*

Copies of this Emergency Motion have been hand-delivered to the chambers of both the Honorable Marvin Isgur and the Honorable Lynn Hughes. A supporting declaration from Dr. Ann Fenech, Managing Partner and Maritime/Admiralty Specialist of the Maltese Law Firm Fenech & Fenech Advocates, is forthcoming and will be hand-delivered to the chambers of the Honorable Marvin Isgur and the Honorable Lynn Hughes as soon as possible. The Debtors already have notice of the forthcoming declaration. See <u>Supplemental Notice of Intention to Raise Issues About Foreign Law</u> [Bankr. Dkt. No. 425].

\* \* \*

WHEREFORE, Mega Bank respectfully requests that the Court enter an order rescheduling a hearing on the Motion for Relief for a date and time on or before Tuesday, September 24, 2013, and granting such further relief as may be just and necessary under the circumstances.

*[remainder of page intentionally left blank]*

Respectfully submitted this 20th day of September, 2013,

                        **MAYER BROWN LLP**

                        By:   /s/ Charles S. Kelley
                              Charles S. Kelley
                              State Bar No. 11199580
                              Southern District of Texas Bar No. 15344
                              700 Louisiana Street, Suite 3400

Houston, TX 77002-2730
Telephone: 713 238-3000
Facsimile: 713 238-4888
Email: ckelley@mayerbrown.com

*and*

Frederick D. Hyman (*pro hac vice* admission pending)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Telephone No.: 212 506-2500
Facsimile No.: 212 262-1910
Email: fhyman@mayerbrown.com
Email: mlotito@mayerbrown.com

*Attorneys for Mega International Commercial Bank Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2013, a true and correct copy of the aforementioned Emergency Motion was served on all parties entitled to receive electronic notice in these Cases by the Electronic Case Filing system and on all parties listed below by electronic mail.

Counsel to Debtors
William A. (Trey) Wood, III
Jason G. Cohen
BRACEWELL & GIULIANI LLP
711 Louisiana, Suite 2300
Houston, TX 77002
trey.wood@bgllp.com
jason.cohen@bgllp.com

Evan D. Flaschen
BRACEWELL & GIULIANI LLP
225 Asylum Street, Suite 2600
Hartford, CT 06103-1516
evan.flaschen@bgllp.com

Robert G. Burns
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas
New York, NY 10020-1104
bob.burns@bgllp.com

United States Trustee
Christine March
Office of the U.S. Trustee
515 Rusk Ave., Suite 3516
Houston, TX 77002
christine.a.march@usdoj.gov

Proposed Co-Counsel to Committee
John R. Ashmead
Benjamin Blaustein
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
blaustein@sewkis.com

Craig A. Wolfe
James S. Carr
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
cwolfe@kelleydrye.com
jcarr@kelleydrye.com

Other Notice Parties
David W. Parham
John E. Mitchell
Rosa A. Shirley
BAKER McKENZIE LLP
2001 Ross Ave, Ste 2300
Dallas, TX 75201
david.parham@bakermckenzie.com
john.mitchell@bakermckenzie.com
rosa.shirley@bakermckenzie.com

John P. Melko
Peter A. McLauchlan
Clinton R. Snow
Anacarolina Estaba
Orin H. Lewis
Stacy R. Obenhaus
GARDERE WYNNE SEWELL LLP
1000 Louisiana Street, Ste 3400
Houston, TX 77002
jmelko@gardere.com
pmclauchlan@gardere.com
csnow@gardere.com
aestaba@gardere.com
olewis@gardere.com
sobenhaus@gardere.com

| | |
|---|---|
| Eli O. Columbus<br>Sean B. Davis<br>Weiting Hsu<br>WINSTEAD PC<br>500 Winstead Building<br>2728 N. Harwood Street<br>Dallas, TX 75201<br>ecolumbus@winstead.com<br>sbdavis@winstead.com<br>whsu@winstead.com<br><br>William R. Greendyke<br>FULBRIGHT & JAWORSKI LLP<br>2200 Ross Ave, Suite 2800<br>Dallas, TX 75201<br>william.greendyke@nortonrosefulbright.com<br><br>Jason L. Boland<br>Mark A. Worden<br>Robert A. Black<br>FULBRIGHT JAWORSKI LLP<br>1301 McKinney, Ste 4100<br>Houston, TX 77010<br>jboland@fulbright.com<br>mworden@fulbright.com<br>rblack@fulbright.com | Robin C. Gibbs<br>Angus J. Dodson<br>David M. Sheeren<br>GIBBS & BRUNS LLP<br>1100 Louisiana, Ste 5300<br>Houston, TX 77002<br>rgibbs@gibbsbruns.com<br>jdodson@gibbsbruns.com<br>dsheeren@gibbsbruns.com<br><br>Vidal G. Martinez<br>MARTINEZ PARTNERS LLP<br>One Riverway, Suite 1700<br>Houston, TX 77056<br>vidal@martinez.net<br><br>Dr. Ann Fenech<br>FENECH & FENECH ADVOCATES<br>198, Old Bakery Street<br>Valletta VLT1455<br>Malta<br>ann.fenech@fenlex.com |

/s/ Charles S. Kelley
Charles S. Kelley