**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TMT PROCUREMENT CORPORATION, | § | Case No.: 13-33763 |
| *et al.*,[1] | § | |
| | § | |
| Debtors. | § | (Jointly Administered) |

**MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD.'S
EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**NOTICE UNDER BLR 9013-1(b) AND 9013-1(i)**

THERE WILL BE A HEARING ON THIS MOTION ON <u>OCTOBER 15, 2013</u>, AT 1:30 P.M. IN COURTROOM 404 AT THE U.S. BANKRUPTCY COURT, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO

---

[1] The Debtors in these Chapter 11 cases (the "**Cases**") are:  (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Inc.; (10) A Ladybug Corporation; (11) C Ladybug Corporation; (12) D Ladybug Corporation; (13) A Handy Corporation; (14) B Handy Corporation; (15) C Handy Corporation; (16) B Max Corporation; (17) New Flagship Investment Co., Ltd; (18) RoRo Line Corporation; (19) Ugly Duckling Holding Corporation; (20) Great Elephant Corporation; and (21) TMT Procurement Corporation.

THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

1. Mega International Commercial Bank Co., Ltd., both in its capacity as an individual lender as well as its role as agent bank in those certain syndicated facilities related to certain of the above-captioned debtors and debtors in possession (collectively, "**Mega Bank**"), through its undersigned counsel, hereby files this motion (the "**Motion**") for entry of an order directing the Debtors to produce documents in response to Mega Bank's requests for production of documents. The statutory predicates for the relief requested in this Motion are Sections 105(a), 363, 364, 1109, and 1121 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 7037 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BASIS FOR RELIEF

2. The Debtors wholly rely upon non-Debtor entities for the survival of these Cases. As this Court is well aware, the Whale Debtors have bareboat chartered the *M/V D Whale*, the *M/V G Whale*, and the *M/V H Whale*, among others, to non-Debtor affiliate Blue Whale Corporation ("**Blue Whale**") at a charter rate of $40,000 per day. Blue Whale, with the assistance of non-Debtor affiliates, has time chartered the vessels to other entities, whose charterhire payments constitute the sole source of operating cash-flow for the respective vessels and bankruptcy estates. The Debtors, therefore, cannot credibly contest that a fulsome understanding of the charterers and their ability to perform is essential, for example, to establish "cause" to extend exclusivity or to ensure adequate protection of Mega Bank's interests upon use of cash collateral or obtaining post-petition financing.

2

3. On August 8, 2013, the Debtors produced three separate time charters in respect of the *M/V D Whale*, the *M/V G Whale*, and the *M/V H Whale* (the "**Time Charters**").[2] See Exhibit A. As demonstrated in Table 1, the counterparties to the Time Charters are Avantgarde Shipping Limited of Hong Kong ("**Avantgarde HK**") and ECB International LLC of UAE ("**ECB**"):[3]

| Table 1 | | |
|---|---|---|
| **Vessel** | **Bareboat Charterer** | **Time Charterer** |
| *M/V D Whale* | Blue Whale | Avantgarde HK |
| *M/V G Whale* | Blue Whale | ECB |
| *M/V H Whale* | Blue Whale | ECB |

4. Putting aside the identity of the charterers for the moment, the Time Charters themselves are questionable on their face. They are identical but highly unusual in relation to current market conditions. The Time Charters call for payment of charterhire in monthly arrears, which is nearly unheard of in the shipping industry, where the standard is monthly or every fifteen days in advance. The rates of $19,875 per day are unusually high in the context of the currently depressed shipping markets, where vessels of a similar size to the Whales have been earning on average between $5,000 and $10,000 per day on the spot market for carrying oil during these periods. That said, however, the vessels seem to be largely inactive, so it remains unclear how the charterers can earn enough money in the prevailing market to pay the charterhire. Table 2 demonstrates the vessel's locations as of October 10, 2013, and the preceding twenty-eight days:

---

[2] The Debtors remain obligated to produce charterparty information pursuant to Paragraphs 2 and 3 of this Court's *Order to Provide Information* [Bankr. Dkt. No. 201]. We have heard representations that the *M/V C Whale*, for example, will be chartered to ECB, but, to date, we only have received an unexecuted "Addendum to Memorandum of Understanding" by and between Blue Whale, as "the Owner," and Nasatel General Trading ("**Nasatel**"), as "the Hirer." See Exhibit B.

[3] For simplicity, all references to "ECB" shall include without limitation Avantgarde HK, Avantgarde (as hereinafter defined), and Nasatel (as hereinafter defined).

| Table 2 | | |
|---|---|---|
| Vessel | Location as of Oct. 10 | Last 28 Days |
| *M/V D Whale* | Gulf of Suez, Suez Canal | Gulf of Suez, Suez Canal |
| *M/V G Whale* | Oman | UAE (9/13) to Oman (10/10) |
| *M/V H Whale* | UAE | UAE |

5. Indeed, the payment of charterhire, overall, has been substantially late, despite the non-market payment arrangement of monthly in arrears. Interest should be charged on the late payments, but that does not appear to be happening.[4] Table 3 demonstrates ECB's untimely payments.[5]

| Table 3 | | | | |
|---|---|---|---|---|
| Vessel | Month of Hire | Due Date[6] | Payment Date | Days Late |
| *M/V G Whale* | June 2013 | June 30, 2013 | Aug. 1, 2013 | 32 |
| *M/V G Whale* | July 2013 | July 31, 2013 | Aug. 1, 2013 | 1 |
| *M/V H Whale* | July 2013 | July 31, 2013 | Aug. 27, 2013 | 27 |
| *M/V D Whale* | Aug. 2013 | Aug. 31, 2013 | Sept. 23, 2013 | 23 |
| *M/V G Whale* | Aug. 2013 | Aug. 31, 2013 | outstanding | at least 41 |
| *M/V H Whale* | Aug. 2013 | Aug. 31, 2013 | Sept. 23, 2013 | 23 |
| *M/V D Whale* | Sept. 2013 | Sept. 30, 2013 | outstanding | at least 11 |
| *M/V G Whale* | Sept. 2013 | Sept. 30, 2013 | outstanding | at least 11 |
| *M/V H Whale* | Sept. 2013 | Sept. 30, 2013 | outstanding | at least 11 |

6. For the payments received on September 23, 2013, they were not only late but also made by an entity that is not party to any of the Time Charters: Avantgarde Shipping Pte. Ltd. ("**Avantgarde**"), an entity organized under Singaporean law. See Exhibit C.

7. ECB's financial underperformance is not the only significant source of concern to Mega Bank. ECB, Avantgarde HK, and Avantgarde are unknown to many in the shipping industry. To begin, Avantgarde HK does not appear to exist. If a Hong Kong company is not listed with the Hong Kong Companies Registry, then it is reasonable to assume that it does not

---

[4] Clause 9 of each Time Charter provides for interest to accrue from the date after the due date through and including the date on which payment is made. See Exhibit A, Clause 9.

[5] This chart does not include the *M/V A Whale* or the *M/V B Whale*, which the respective Debtors also have chartered to ECB.

[6] Payment of charterhire is due "at end of each calendar month." See Exhibit A, Clause 9. Table 3 assumes payment is due on the last business day of each calendar month.

4

exist. Searches with the Hong Kong Companies Registry revealed no listing for Avantgarde HK. See Exhibit D.[7] The company chop/seal applied beneath the signature on the last page of the *M/V D Whale* charter specifies company registration number 1762798. This is not the registration number of any company named "Avantgarde" registered in Hong Kong; instead, it is the registration number of a company called Vigo Trading Limited, which appears unconnected to the shipping industry. See Exhibit E.

8. So, when certain of the Prepetition Secured Lenders' respective counsel approached Debtors' counsel on August 29, 2013, to discuss serving Rule 2004 notices on ECB, Debtors' counsel stated that such service "would be a declaration of outright war" and "a transparent and malicious effort to scare away an excellent customer." See Exhibit F. The Debtors' position appears to be that ECB is an "excellent customer" simply because ECB makes certain of its payments, albeit very untimely payments. Respectfully, from Mega Bank's perspective, the position that "a check is a check" is insufficient and irresponsible, especially given the collateral at stake and the extremely limited utilization based on a percentage of days laden for the vessels while under the ECB charter.[8]

9. Even worse, ECB's current or former, direct or indirect connections with non-Debtor affiliates raise concerns as to whether the Time Charters truly are reflections of market realities or whether the Time Charters exhibit, at best, wishful thinking that a successful reorganization is in prospect. Through its own diligence, Mega Bank has learned that Avantgarde's sole directors and shareholders are Devanandan Kizhakkoot Kunjayyappan

---

[7] A search of the Hong Kong Companies Registry also was conducted for "Avantgrade Shipping Limited" because that is the name on the seal of the Time Charter for the *M/V D Whale*. That search populated no results.

[8] As the Court will recall, Debtors' own designated expert, Mr. Esben Christensen of AlixPartners, testified that the utilization of the ECB chartered vessels was low.

("**Mr. K.K. Devanandan**") and Rajeev Kumar Madhusoodanan Nair.  See Declaration of Yap Fook Ken (Oct. 3, 2013), attached hereto as Exhibit G.  The Debtors' financial advisors have informed Mega Bank that, according to certain representatives of TMT, Mr. K.K. Devanandan is the former, not current, Chief Operating Officer of TMT's NOS Shipmanagement, having left the organization toward the end of 2012.  Even accepting these representations, Mr. K.K. Devanandan is listed as a director of RoRo Express Pte. Ltd. ("**RoRo Express**").  Mega Bank has good reason to believe that RoRo Express is part of the TMT group because, among other things, a "close family relative" of Mr. Su is the sole shareholder of RoRo Express and three officers of RoRo Express also are officers of NOS Shipmanagement.

10. Piecing together the web of non-Debtor affiliates and their interconnected officers and directors is difficult enough, but the lack of information from the Debtors makes it impossible.  We know, however, that ECB paid certain expenses of the *M/V A Ladybug*, a RoRo vessel presently under arrest in Malta.  See Exhibit H.  If ECB were indeed independent of TMT, it would appear very difficult to justify that expenditure.  Both Ms. Donahue and Mr. Christensen of AlixPartners have testified that they have no explanation as to why ECB would advance any monies or have paid any bunkers for the *M/V A Ladybug*, a vessel engaged in services for which ECB has no apparent relationship with TMT.  But Avantgarde (understood to be related to ECB) and RoRo Express share a common director:  Mr. K.K. Devanandan.  The sole shareholder and three officers of RoRo Express are connected to Mr. Su and/or NOS Shipmanagement.

11. For these and other reasons, Mega Bank has established good cause for its discovery requests.  Mega Bank has directed formal ECB-related discovery requests only to the Debtors, in an attempt to avoid the alleged "outright war" suggested by Debtors' counsel.  See Exhibit I-1 to -4 (formal requests for production from Mega Bank).  The formal discovery

6

requests were made in accordance with Rule 34 of the Federal Rules of Civil Procedure, made applicable to contested matters in bankruptcy cases by Bankruptcy Rules 7034 and 9014. An additional discovery request in the form of the *Prepetition Secured Lenders' List of Questions to Debtor* [Bankr. Dkt. No. 492] (the "**Lenders' Questions**") was issued in accordance with the District Court's Management Order [Bankr. Dkt. No. 485]. See Exhibit J. To be clear, Mega Bank has not received satisfactory responses from the Debtors. See Exhibit K-1 to -4 (responses and objections of Debtors). It defies reason that the Debtors could not, for example, "advise of any known employees, officers or directors of Nasatel, ECB and Avantgarde Shipping Pte Ltd (of Singapore) and Avantgarde Shipping Ltd (of Hong Kong)" in response to Question 9 of the Lenders' Questions. See Exhibit L (Debtors' response to Question 9). Someone at Blue Whale must be communicating with someone at ECB/Avantgarde. At a minimum, given the approximately $3 million in delinquent charterhire payments owed by ECB/Avantgarde to the Debtors, it would be irresponsible if the Debtors were not in contact with the charter counterparty pursuing collection.

12. Mega Bank respectfully requests that the Court enter an order (i) directing the Debtors to respond to the following requests for production and produce the requested documents and materials, as listed in Table 4, solely in relation to ECB, Nasatel, Avantgarde HK, or Avantgarde, and (ii) overruling all objections thereto:

| Table 4 | |
|---|---|
| **Requests for Production** | **Date of Request** |
| First RFP Nos. 35–37 | June 29, 2013 |
| Second RFP Nos. 1–21, 24 | Sept. 10, 2013 |
| Third RFP Nos. 25–26, 32, 35 | Sept. 20, 2013 |
| Lenders' Questions 8–10 | Sept. 30, 2013 |
| Fourth RFP No. 39–42 | Oct. 7, 2013 |

13. As the Court can confirm from reviewing the attached requests that correspond to the table above, the Lenders have been requesting all correspondence, emails and other materials

that would include and encompass communications in relation to charterparties with Nasatel, Blue Whale and Avantgarde since June 29, 2013, the date of the first RFP. The same can be said with respect to any charters, drafts or other documents related to the charters since that first RFP of June 29, 2013. Having not fully received responsive documents related to the Whale charters and communications with ECB, Avantgarde and Nasatel, Mega Bank issued a second RFP on September 6, 2013, specifically requesting, among other items, materials related to these parties. Many of the documents that would be responsive to the second request would also have been responsive to the first RFP, in particular the requests that are the subject of this Motion— Nos. 35–37.

14. From the Court's review of the above-identified requests under third and fourth RFP above, there is a recurring theme regarding the materials that Mega Bank has continuously requested, but, to date, not received, regarding ECB, Avantgarde, and Nasatel. There are other materials requested and for which no response has been provided, and Mega Bank will be prepared to discuss those in detail at the hearing on October 15, 2013.

*   *   *

WHEREFORE, Mega Bank respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as may be just and necessary under the circumstances.

[*remainder of page intentionally left blank*]

Respectfully submitted this 11th day of October, 2013,

        **MAYER BROWN LLP**

        By:    /s/ Charles S. Kelley
                  Charles S. Kelley
                  State Bar No. 11199580
                  Southern District of Texas Bar No. 15344
                  700 Louisiana Street, Suite 3400

Houston, TX 77002-2730
Telephone: 713 238-3000
Facsimile: 713 238-4888
Email: ckelley@mayerbrown.com

*and*

Frederick D. Hyman (admitted *pro hac vice*)
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Telephone No.: 212 506-2500
Facsimile No.: 212 262-1910
Email: fhyman@mayerbrown.com

*Attorneys for Mega International Commercial Bank Co., Ltd.*

9

**CERTIFICATE OF COMPLIANCE WITH FRCP 37(a)(1)**

     I hereby certify that, in compliance with Rule 37(a)(1) of the Federal Rules of Civil Procedure, made applicable to contested matters in cases under title 11 of the United States Code by Rules 7037 and 9014 of the Federal Rules of Bankruptcy Procedure, based upon the number and tenor of the discovery disputes in these Cases, the issues before the Court would not have been resolved by efforts to confer between counsel.

Date:  October 11, 2013          /s/ Charles S. Kelley
       Houston, Texas             Charles S. Kelley

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2013, a true and correct copy of the aforementioned Motion was served on all parties entitled to receive electronic notice in these Cases by the Electronic Case Filing system and by electronic mail to counsel for the Debtors and counsel to the Committee.

Date:  October 11, 2013                    /s/ Charles S. Kelley
       Houston, Texas                         Charles S. Kelley