IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| TMT PROCUREMENT CORPORATION | § | CASE NO: 13-33763 |
| | § | |
| A WHALE CORPORATION | § | CASE NO: 13-33741 |
| | § | |
| B WHALE CORPORATION | § | CASE NO: 13-33742 |
| | § | |
| C WHALE CORPORATION | § | CASE NO: 13-33743 |
| | § | |
| D WHALE CORPORATION | § | CASE NO: 13-33744 |
| | § | |
| E WHALE CORPORATION | § | CASE NO: 13-33745 |
| | § | |
| G WHALE CORPORATION | § | CASE NO: 13-33746 |
| | § | |
| H WHALE CORPORATION | § | CASE NO: 13-33747 |
| | § | |
| A DUCKLING CORPORATION | § | CASE NO: 13-33748 |
| | § | |
| F ELEPHANT INC. | § | CASE NO: 13-33750 |
| | § | |
| A LADYBUG CORPORATION | § | CASE NO: 13-33751 |
| | § | |
| C LADYBUG CORPORATION | § | CASE NO: 13-33752 |
| | § | |
| D LADYBUG CORPORATION | § | CASE NO: 13-33754 |
| | § | |
| A HANDY CORPORATION | § | CASE NO: 13-33755 |
| | § | |
| B HANDY CORPORATION | § | CASE NO: 13-33756 |
| | § | |
| C HANDY CORPORATION | § | CASE NO: 13-33757 |
| | § | |
| B MAX CORPORATION | § | CASE NO: 13-33758 |
| | § | |
| NEW FLAGSHIP INVESTMENT CO LTD | § | CASE NO: 13-33759 |
| | § | |
| RORO LINE CORPORATION | § | CASE NO: 13-33760 |
| | § | |
| UGLY DUCKLING HOLDING CORPORATION | § | CASE NO: 13-33761 |
| | § | |

| | | |
|---|---|---|
| **GREAT ELEPHANT CORPORATION** | § | **CASE NO: 13-33762** |
| | § | **Jointly Administered Order** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

Vantage Drilling Company seeks a stay pending appeal of three orders that pertain to the disposition of pledged shares of stock in Vantage Drilling Company.  Two motions for stay have been filed by Vantage.  Because Vantage failed to present any substantial evidence in support of its motions for stay, it has failed to satisfy the standards for the imposition of a stay.  Accordingly, the motions for stay are denied.

### Orders for Which Stay is Requested

Vantage seeks to stay three orders.

The first motion filed by Vantage (ECF #1325) seeks to stay both the Final Debtor-in-Possession Financing Order (ECF #699) and the Supplemental Order issued in furtherance of the Final Debtor-in-Possession Financing Order (ECF #1294).

The second motion filed by Vantage (ECF #1391) seeks to stay the Share Pledge Order (ECF #1354).

The Final Debtor-in-Possession Financing Order was entered on November 7, 2013.  It was timely appealed by Vantage.  Briefing is complete, and oral arguments have been held at the Fifth Circuit.  Prior to April 4, 2014, Vantage did not seek to stay the implementation of that Order.  Accordingly, much of the November 7, 2013 order has been fully consummated.  Pursuant to that Order, at least these material events have transpired:

- The Court has taken physical possession of approximately $50,000,000.00 worth of shares (at present market value) in Vantage, to be utilized as directed by the Court for Estate purposes and to assure compliance with the Court's orders.

- Macquarie Bank has advanced $20,200,000.00 to the Debtors pursuant to a post-petition loan.  It is undisputed that Macquarie would not have made the $20,200,000.00 in advances without the security of the Vantage Shares.

- Over $20,000,000.00 of additional funds held in pre-petition cash reserve accounts have been ordered to be utilized (over the objections of the holders of pre-petition secured claims) for the benefit of the Estates.  The orders requiring the use of these funds were issued after the Court determined that adequate protection existed.  The Court also ordered that any deficiencies in the availability of adequate protection would be satisfied from the proceeds of the liquidation of the Vantage shares deposited with the Court.  11 U.S.C. § 507(b).

- Plans have been confirmed for three of the Debtors.  Those plans provide for exit financing that is partially secured by a portion of the Vantage shares.

The Supplemental Order, issued on March 28, 2014, merely implements the Final Debtor-in-Possession Financing Order.  Having been issued after a default under the Final Debtor-in-Possession Financing Order, the Supplemental Order merely recognizes an undisputed default under the Final Debtor-in-Possession Financing Order, allows a period of forbearance, and mandates that Macquarie (the lender under the Final Debtor-in-Possession Financing Order) apply the proceeds of the liquidation of the Vantage shares precisely as required in the Final Debtor-in-Possession Financing Order.

The Share Pledge Order was issued on April 8, 2014, in conjunction with the confirmation of the plans of reorganization filed by three Debtors—A Handy Corporation, B Handy Corporation, and C Handy Corporation.  The Share Pledge Order authorizes 1,750,000 of Vantage Shares (currently valued at approximately $3,000,000.00) to be transferred from the shares pledged to Macquarie to a new exit loan facility to be provided by a third party lender.  If the exit loan facility is repaid without default, the shares are to be returned to the Court for further administration.  If there is a default under the exit loan facility, the new lender may exercise rights against the Vantage shares.

**Standards Applicable to a Stay Pending Appeal**

The applicable standards are well known. To prevail on a motion for stay pending appeal, four factors are considered:

- Whether the movant has made a showing of likelihood of success on the merits.

- Whether the movant has made a showing of irreparable injury if the stay is not granted.

- Whether the granting of the stay would substantially harm the other parties.

- Whether the granting of the stay would serve the public interest.

*Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982).

The movant need not prevail on all four factors. However, the appeal must have a reasonable possibility of success on the merits, or a stay should not be granted. *Arnold v. Garlock*, Inc., 278 F.3d 426, 438-39 (5th Cir. 2001).

**Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, Vantage must demonstrate only a substantial case on the merits concerning a substantial legal question. *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001).

Although it is a close call, the Court concludes that Vantage has demonstrated a likelihood of success on the merits as to each of the challenged orders. This issue depends on whether the Final Debtor-in-Possession Financing Order is altered on appeal. The Supplemental Order and the Share Pledge Order each depend on the viability of the Final Debtor-in-Possession Financing Order. Accordingly, if that Order is altered on appeal, the Supplemental Order and Share Pledge Order are likely to be altered as well.

Nevertheless, the Court initially reviews the Final Debtor-in-Possession Financing Order to determine if the original justification for that order has proven incorrect in light of subsequent events. The Court concludes that the original basis has not been undermined by subsequent events.

Vantage challenges the validity of the Final Debtor-in-Possession Financing Order on the basis that Vantage claims an interest in the pledged shares. Vantage has sued the owner of F3 Capital. Vantage has not sued F3 Capital, and the statute of limitations on a direct suit against F3 Capital (but not a suit in furtherance of collection of a judgment) has long since passed.

Although the pledged shares might be subject to collection remedies on a judgment, Vantage has no interest in the shares themselves. At the time that this Court issued its order, Vantage's hoped-for judgment and anticipated collection efforts gave Vantage no present ability to attach the shares held by F3 Capital. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) (federal court precluded from issuing a pre-judgment writ of attachment).

If Vantage obtains a judgment against the owner of F3 Capital, there is little question that Vantage could ultimately gain control over the shares at issue. For example, Vantage could utilize the Texas Turnover Statute or could use other means of execution to cause the sale of the owner's interest in F3 Capital. Once the owner's interest in F3 Capital was owned by Vantage (in its capacity as a judgment creditor), Vantage could cause F3 Capital to sell or otherwise dispose of the shares in satisfaction of the judgment. Alternatively, Vantage could exercise post-judgment remedies to sue F3 Capital for a declaration that F3 is the alter ego of its owner. If Vantage were to prevail in that suit, the shares could then be used to satisfy the judgment.

However, the foregoing methods of collection are *not* the reasons why Vantage argues that it has an interest in the shares. Instead, Vantage argues that F3 *presently* holds the shares in a constructive trust for Vantage's benefit. That narrow argument is foreclosed by controlling Fifth Circuit authority. *See Bollore S.A. v. Import Warehouse,* 448 F. 3d 317 (5th Cir. 2006). In *Bollore,* the Court held that it was error to pierce the veil of a non-defendant. Yet, that is Vantage's only theory by which it can assert an interest in the shares.

Accordingly, the Court remains convinced that Vantage has no rights in the shares that are at issue in this proceeding. To be sure, if Vantage obtains a judgment against F3's owner, and if Vantage then obtains collection remedies against the shares, they may *then* have rights in the shares. But, at this stage, with an unpierced veil, and an unnamed defendant, the Court did not err in finding that Vantage has no present interest in the shares.

Nevertheless, all parties have stipulated that the Fifth Circuit asked challenging questions at oral argument. The Court recognizes that such tough questions are not borne of frivolous pleadings. As Vantage establishes in its pleadings, the standard for likelihood of success on the merits is a low standard. Given the minimal showing that is required, and the tenor of the oral arguments at the Fifth Circuit, the Court finds that this standard has been satisfied.

*Irreparable Injury*

On this issue, Vantage plainly fails.

Some context is required. The presence of an irreparable injury is a fact issue. Vantage filed its motion for a stay pending appeal, and requested an emergency hearing. The Court accommodated Vantage's request and conducted a hearing on April 7, 2014. Vantage introduced no evidence at the hearing. Since the Court was presented with a complete absence of evidence, the Debtors moved for an order denying relief to Vantage. Vantage should have presented

evidence at the April 7, 2014 hearing. Nevertheless, the Court denied the Debtors' request, and scheduled an April 14, 2014 hearing to allow Vantage a "second bite at the apple" for the introduction of evidence.

At the April 14, 2014 hearing, Vantage called no witnesses. Vantage did offer 7 exhibits, none of which addressed the issue of irreparable injury.

Vantage must prove whether a stay pending appeal should be granted by a preponderance of the evidence. *See In re Target Graphics, Inc.*, 372 B.R. 866, 870 (E.D. Tenn. 2007); *see also In re Holstine*, 458 B.R. 392, 394 (Bankr. E.D. Mich. 2011) *aff'd,* 11-14573, 2012 WL 2891220 (E.D. Mich. July 15, 2012); *In re Innovative Commc'ns*, 390 B.R. 184, 187 (Bankr. D.V.I. 2008); *In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (Bankr. N.D. Ohio 2004). With a complete absence of evidence, the Court finds that there is no irreparable injury to Vantage.

Vantage argues that loss of its appellate rights through possible mootness is a *per se* irreparable injury as a matter of law. The problem with this argument is that the cow is already out of the barn. As set forth above, the shares have already been used to obtain the $20,200,000.00 of debtor-in-possession financing. Moreover, the shares have already been used as a form of adequate protection for over $20,000,000.00 in cash collateral used by the Debtors over the vocal objections of the prepetition lenders.

Put simply, there is an absence of any evidence to support additional irreparable injury if a stay is not granted.

If the debtor-in-possession lender's rights in the shares may not be modified on appeal, then the appeal is already moot. If the debtor-in-possession lender's rights in the shares *may* be modified on appeal, then all that is occurring is that the shares are being converted to cash and the cash is being paid to the lender. If Vantage prevails on appeal and proves that the issue is not

moot, the transformation from shares into cash will not alter the mootness. To be sure, Vantage will not be able to look to the shares that have been sold in the open market. However, Vantage (in the event that it prevails on appeal) would still be able to look to the proceeds from the sale of the shares.

Accordingly, the true issue before the Court is whether there is irreparable injury from forcing Vantage to look to cash proceeds from the sale of shares rather than to the shares themselves. The Court acknowledges some theoretical possibility of harm in that regard, but there is no evidence to support the possibility. How is Vantage irreparably worse off looking at cash rather than at shares? The evidentiary record is void.

The same is true of the Supplemental Order and the Share Pledge Order. Neither of those orders inflicts any irreparable injury (or the threat of mootness) on Vantage. The Supplemental Order implements the original grant from the Final Debtor-in-Possession Financing Order. The Supplemental Order merely allows the sale of shares already pledged. If Macquarie's prior reliance on the Final Debtor-in-Possession Financing Order does not create appellate mootness, the Supplemental Order has no additional effect. Vantage would merely look to cash rather than shares.

The Share Pledge Order is of even less consequence to Vantage. The Share Pledge Order merely alters the identity of the entity to whom the exact same shares would serve as collateral. The new entity is fully informed of all claims made by Vantage. If reliance on the Court's prior order does not render Vantage's arguments moot, then the shifting of the shares to a different, identified creditor, can have no effect on Vantage.

Vantage has failed to demonstrate irreparable injury.

**Harm to Other Parties**

Vantage also fails to offer any proof with respect to the harm to other parties. Conversely, the Debtor's witness at the hearing on the motion for a stay pending appeal provided extensive testimony about the damages that would result to third parties.

First, if the order is stayed, it is uncontroverted that all of the bankruptcy cases will fail. Macquarie has a pledge of the Estate's operating cash. A default already exists under the Macquarie loan, but Macquarie has agreed to forebear from exercising its remedies. If the shares are not available for payment of Macquaries' claim, it is undisputed that the cash will then be frozen by Macquarie. Without cash, the Debtors cannot pay crew wages, fuel and other charges. Several of the Debtors are planning sales of their ships or reorganizations of their debt. The undisputed testimony is that there is substantial equity in several of the ships. If the Debtors are forced into a cash free fall, tens of millions of dollars are likely to be lost.

Second, three of the Debtors have confirmed plans of reorganization that will not be consummated if the orders are stayed. The confirmed plans received the affirmative votes of 100% of those persons voting. The plans provide for full payment of all unsecured claims (exceeding $1,000,000.00), and a consensual restructure of tens of millions of dollars of prepetition debt. Moreover, the plans result in a $4,000,000.00 reduction of the $20,200,000.00 owed to Macquarie. This will be beneficial to all of the Estates. The $4,000,000.00 reduction, when considered in light of a transfer of the pledge of only $3,000,000.00 of the Vantage shares, even has a potential benefit to Vantage.

Third, the Court ordered the prepetition lenders to allow the Debtors' pre-petition cash reserves to be used to preserve and protect the ships that served as collateral. If the cases are allowed to collapse by the issuance of a stay, there is a substantially increased likelihood that the

remaining Vantage shares will be inadequate to cover the 11 U.S.C. § 507(b) claims of those lenders.

To all of these readily apparent harms to third parties, Vantage offers no controverting evidence.

**Public Interest**

Like most disputes, there are competing public interests at stake. However, the overwhelming public interest disfavors a stay.

Although Vantage again offers no evidence on this issue, it argues that preservation of its appellate rights against mootness is in the public interest. Vantage is correct on this issue, but as set forth above, Vantage has not presented a colorable case as to how staying the orders will affect the mootness issue.

There is an important public interest in ensuring that third parties, acting in good faith, are able to rely on unstayed bankruptcy court orders granting liens on assets. Promoting a successful reorganization is one of the most important public interests in a bankruptcy case. *In re Transtexas Gas Corp.*, 303 F.3d 571, 580 (5th Cir. 2002); *see also In re Integrated Health Servs., Inc.*, 258 B.R. 96, 108 (Bankr. D. Del. 2000) *modified on reconsideration,* 275 B.R. 199 (Bankr. D. Del. 2001). The public interest in seeing that the Bankruptcy Code's underlying policy of helping to reorganize debtors and provide them with a fresh start is not frustrated, weighs against granting a stay if doing so would thwart the reorganization process. *In re Richmond Metal Finishers, Inc.*, 36 B.R. 270, 273 (Bankr. E.D. Va. 1984).

Prior to entry of the Final Debtor-in-Possession Financing Order, the Court heard extensive testimony on whether Macquarie had acted in good faith. At the hearing, Vantage introduced no evidence that Macquarie had not acted in good faith. When a third party lender,

like Macquarie, lends in good faith, it is entitled to the protections of § 364(e). Securing post-petition financing is often a debtor's only chance at successful reorganization. If post-petition lenders could not rely on court orders for the protections they bargained for, it would certainly hamper such lending, undoubtedly interfering with many debtors' efforts to successfully reorganize. *See In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1195 (10th Cir. 1999) (purpose of 364(e) is to encourage lenders to advance funds to a bankrupt company in reliance on the unstayed order of bankruptcy court, even if on appeal); *see also In re Foreside Mgmt. Co., LLC*, 402 B.R. 446, 451 (B.A.P. 1st Cir. 2009) (purpose of 364(e) is to encourage lenders to extend credit to debtors in bankruptcy by eliminating the risk that any lien securing the loan will be modified on appeal).

## Conclusion

While Vantage has met the low threshold for showing likelihood of success on the merits, it has failed to provide evidence supporting the other three factors considered in granting a stay. The Debtors, and prepetition creditors, have presented substantial evidence on the latter two factors, all of which weighs against granting a stay. In balancing the equities, Vantage's motion must be denied. The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **April 16, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE