

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
09/12/2016

| | | |
|---|---|---|
| **In Re:** | § | **Chapter 11** |
| | § | |
| **TMT PROCUREMENT CORPORATION,** | § | **Case No. 13-33763** |
| ***et al.,***[1] | § | |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

### ORDER GRANTING DEBTORS' MOTION TO APPROVE SETTLEMENT WITH THE JOINT OFFICIAL LIQUIDATORS OF VANTAGE DRILLING COMPANY AND PROVIDING RELATED RELEASES AND INJUNCTION <u>PURSUANT TO BANKRUPTCY RULE 9019</u>

Upon consideration of the Debtors' motion at ECF 2590 (the "<u>Motion</u>"), and due and proper notice having been given to all parties-in-interest including F3 Capital and Mr. Su by the filing of the Motion on the Court's electronic docket, and good and sufficient cause appearing therefor including the Debtors' representations in the Motion and the record at the hearing on the Motion, and upon the capitalized terms set forth in the Motion to the extent not defined herein, the Court hereby FINDS and ORDERS as follows.

1.   Any objections to the Motion have been considered and either withdrawn or are hereby overruled to the extent set forth herein.

2.   The Settlement Agreement attached to the Motion at <u>Exhibit A</u> satisfies the requirements of Bankruptcy Rule 9019 and satisfies the standards set forth by the United States Court of Appeals for the Fifth Circuit set forth in *Official Committee v. Moeller (In re AGE Refining, Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Accordingly, the Settlement Agreement is fully incorporated herein by reference and is approved in its entirety, and the Debtors are authorized and directed to implement the Settlement Agreement in accordance with its terms. The Debtors shall be authorized to make the Settlement Payment to Vantage in the amount of $250,000. The Settlement Payment shall be made out of cash on hand and shall not be allocated among the Debtors pending further order of this Court.

---

[1]The Debtors in these chapter 11 cases are: (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Inc; (10) A Ladybug Corporation; (11) C Ladybug Corporation; (12) D Ladybug Corporation; (13) A Handy Corporation; (14) B Handy Corporation; (15) C Handy Corporation; (16) B Max Corporation; (17) New Flagship Investment Co., Ltd; (18) RoRo Line Corporation; (19) Ugly Duckling Holding Corporation; (20) Great Elephant Corporation; and (21) TMT Procurement Corporation.

3.    Without limiting the foregoing:

    a.    The general release granted by Vantage and the JOLs in the Settlement Agreement is fully incorporated herein by reference and is fully enforceable in accordance with its terms.

    b.    The general release granted by the Debtors in the Settlement Agreement is fully incorporated herein by reference and is fully enforceable in accordance with its terms.

    c.    The releases in the Settlement Agreement as they apply to or for the benefit of the other Cayman Released Persons and other US Released Persons are fully incorporated herein by reference and are fully binding and enforceable in accordance with their terms.

    d.    The releases set forth in paragraph 3 of the Settlement Agreement and referred to in paragraph 5 of the Settlement Agreement for the benefit of the DIP Lender and all of its current and former affiliates, officers, directors, shareholders, employees and advisers, including legal and financial advisers, are fully incorporated herein by reference, decreed and are fully enforceable in accordance with their terms and the terms of this Order.

    e.    As a result of the releases granted to the DIP Lender and its related persons, subject to paragraph 9 below, the DIP Facility is hereby declared to be fully, finally and indefeasibly paid in full, and the liens of the DIP Facility on the Debtors' assets, including the Pledged Shares and cash on hand, are hereby discharged.

    f.    Subject to the terms set forth in the Settlement Agreement, none of the foregoing releases shall serve to release the Excluded Persons in their capacities as such, nor shall the Settlement Agreement or this Order have any effect on current or future Vantage-Su Claims except that the release granted by Vantage and the other identified persons shall also release any Claims Vantage has asserted or may assert against any US Released Person in respect of the Share Sale Proceeds and the Pledged Shares still in the possession of the Debtors or the registry of the Court; provided that Vantage, the JOLs and persons claiming through either of them shall not include or involve the Debtors, the DIP Lender or any of the other US Released Persons (other than the Excluded Persons in their capacity as such) in the Vantage-Su Claims, whether as additional defendants, impleaded persons, judgment debtors, or otherwise.

4.    All persons, including the Debtors, Vantage, the other US Released Persons and the other Cayman Released Persons are hereby PERMANENTLY AND FOREVER ENJOINED from pursuing any Claims that are released. All persons, including all Excluded Persons, are hereby PERMANENTLY AND FOREVER ENJOINED from pursuing against the DIP Lender and its related persons any Claims that are released, including any Claims

with respect to the DIP Facility, the Pledged Shares, the Sold Shares and the Share Proceeds Amount.

5.  For the avoidance of doubt, the releases of the DIP Lender in the Settlement Agreement as enforced in this Order, and the foregoing injunction as it enjoins the pursuit of Claims against the DIP Lender, do not release and do not enjoin the assertion of Claims (if any) by any person, including any Excluded Person, as to Macquarie Bank Limited in any capacity other than as DIP Lender. Further, for the avoidance of doubt: (1) the definition of "US Debtors" in the Motion, this Order and Settlement Agreement does not include non-debtor affiliates who have not filed Chapter 11 and are not jointly administered in the captioned matter; and, 2) the term "Excluded Persons" in the Motion, this Order and Settlement Agreement shall mean (i) Su other than in his capacity as a creditor, expense claimant, shareholder, officer, equity owner, or director of any US Debtor; (ii) F3 Capital other than in its capacity as a creditor or expense claimant of any US Debtor; and (iii) all affiliates, officers, directors, shareholders, employees and advisors, including legal and financial advisers, of each of the foregoing, in each case only as to Claims that such person has asserted or could assert as a direct Claim against any other such person in respect of the matters that are the subject of the Vantage-Su Claims.

6.  The submission by Vantage to the personal jurisdiction of this Court shall be limited to the implementation of the Settlement Agreement and the enforcement of this Order. Nothing in the Settlement Agreement or this Order shall otherwise be construed as a submission by Vantage or the JOLs to, or a recognition by this Court of, personal jurisdiction over the Vantage or the JOLs with respect to any other matter.

7.  Except as set forth herein with respect to the various releases, and without prejudice to F3's motion to release the remaining Vantage shares at ECF 2349, all Vantage shares still held by the Debtors' broker (in electronic form) or in the Court registry shall remain *in custodia legis* and subject to any rights previously granted by this Court, including by way of adequate protection, pending further entry of this Court.

8.  This Court shall retain jurisdiction to enforce the Settlement Agreement and this Order, including at the direct request of the DIP Lender as a third party beneficiary under the Settlement Agreement. Without limiting the foregoing, Vantage irrevocably consents that the US Debtors can file this Order in the Vantage-Su Claims as an absolute defense to any Claims asserted by Vantage against any US Released Person in such litigation in respect of the Share Sale Proceeds and the Pledged Shares. To the extent Vantage seeks enforcement in this Court, it shall be entitled to do so directly without any requirement that the JOLs seek recognition pursuant to chapter 15 of the Bankruptcy Code. If a person seeks to enforce the Settlement Agreement and this Order after these cases are closed, such person shall be entitled on shortened notice to seek to reopen these cases in order to invoke such jurisdiction.

9.  With respect to the releases and injunction for the benefit of the DIP Lender and its related persons, if any part of such releases or injunction are reversed or modified on appeal or otherwise held to be unenforceable, such releases and injunction shall, in the sole discretion of the DIP Lender, be declared null and void ab initio by providing notice

of same to the Debtors, who will then file a notice to such effect with this Court. In such event, the DIP Lender shall no longer be deemed to have been fully, finally and indefeasibly paid in full and shall have all the rights available to it under the DIP Facility as if the Settlement Agreement and this Order had never been entered into or issued insofar as they affect the rights of the DIP Lender. The foregoing shall not have any effect on the Settlement Agreement or this Order to the extent that they do not relate to such releases and injunction.

10.     This Order shall take effect and be enforceable upon the occurrence of the Effective Date. If a party-in-interest believes that the Effective Date will never occur as a result of the inability to satisfy one or more of the conditions to effectiveness specified in the Settlement Agreement, such party-in-interest shall be entitled to seek a vacatur of this Order on notice and a hearing.

11.     Nothing herein shall waive, release or impair any rights, defenses or claims Mr. Su or F3 Capital may have against the Debtors' estates (but not including the DIP Lender) as an administrative claimant or otherwise.

Dated: this ___ day of _____, 2016

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

#5280868

## SETTLEMENT AGREEMENT

This settlement agreement (this "Agreement") is between (i) TMT Procurement Corp. and each of its affiliates (the "US Debtors") in the jointly administered chapter 11 cases (the "US Proceedings") currently pending in the United States Bankruptcy Court for the Southern District of Texas (the "US Court") at case nos. 13-33763 *et seq.* and (ii) Vantage Drilling Company (in Official Liquidation) ("Vantage"). The US Debtors and Vantage are together referred to as the "Parties").

### RECITALS

WHEREAS:

A.    Pursuant to an order of the Grand Court of the Cayman Islands (the "Cayman Court") dated January 18, 2016 in proceedings FSD 201 of 2015 (JMC) (the "Cayman Proceedings"), Vantage is being wound up by the Cayman Court, and Alex Lawson and Kris Beighton of KPMG have been appointed joint official liquidators of Vantage (the "JOLs")

B.    F3 Capital ("F3"), a company incorporated under the laws of the Cayman Islands the shares of which are owned directly or indirectly by Mr. Nobu Su ("Su"), is a shareholder of record of common shares in Vantage ("F3 Shares");

C.    Prior to the commencement of the US Proceedings and the Cayman Proceedings, Vantage commenced litigation proceedings in the US against Su seeking remedies against both Su and F3 including, among other things, a constructive trust over the F3 Shares, and Su has asserted various counterclaims against Vantage (all current and potential future litigation matters and claims between Vantage, Su and F3, whether in US state or federal courts; US arbitration, Cayman Court or any other jurisdiction or forum, including without limitation the matters which are the subject of any proofs of debt lodged by Su and/or F3 in the official liquidation of Vantage, the "Vantage-Su Claims");

D.    After the commencement of the US Proceedings, F3 pledged certain of the F3 Shares (the "Pledged Shares") to secure, among other things, the US Debtors' debtor-in-possession loan facility (the "DIP Facility") provided by Macquarie Bank Limited (in its capacity as such, the "DIP Lender");

E.    After the US Debtors defaulted under the DIP Facility, the US Debtors sold certain of the Pledged Shares (the "Sold Shares") to repay a portion of the DIP Facility (the proceeds of the Sold Shares applied to such repayment, the "Share Proceeds Amount");

F.    Vantage appealed various orders related to the Pledged Shares and the DIP Facility, and the United States Court of Appeals for the Fifth Circuit vacated such orders, as identified on the docket in the US Proceedings at ECFs 542, 545, 546, 699 and 700, *see TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512 (5th Cir. 2014), in each case subject to the *Order Following Remand* at ECF 2323;

#5210601

G.     Vantage asserts that, depending on various matters including the results of all Vantage-Su Claims, Vantage would be entitled to recover from the US Debtors or the DIP Lender an amount not less than the Share Proceeds Amount;

H.     The US Debtors assert that there are no circumstances under which Vantage would be entitled to recover an amount equal to all or any of the Share Proceeds Amount, whether from the US Debtors, the DIP Lender or otherwise;

I.     The DIP Lender has informed the US Debtors, Vantage and the JOLs that the DIP Lender asserts that there are no circumstances under which Vantage would be entitled to recover all or any of the Share Proceeds Amounts from the DIP Lender; and

J.     The Parties desire to resolve all pending and potential disputes between them, both on their own behalf and on behalf of all persons who could claim through them including the estates in the US Proceedings and the Cayman Proceedings.

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

AGREEMENT

1.     <u>Motion and Order</u>. The US Debtors shall file a motion with the US Court seeking entry of an order (the "<u>US Approval Order</u>") approving this Agreement pursuant to Bankruptcy Rule 9019. Both the motion and the US Approval Order shall be in form and substance satisfactory to the DIP Lender and Vantage.

2.     <u>Settlement Amount</u>. The US Debtors shall pay to Vantage (to an account to be notified) the sum of US$250,000 (the "<u>Settlement Payment</u>"), such payment to be made in accordance with paragraph 7 below.

3.     <u>Releases and Injunction</u>. The Parties agree to the following releases, which shall be approved and enforced in the US Approval Order.

a.     "<u>US Released Persons</u>" shall mean: (i) each of the US Debtors; (ii) each of the US Debtors' estates in the US Proceedings; (iii) all persons claiming through such estates; (iv) Mr. Esben Christensen as the sole authority of the US Debtors; (v) the DIP Lender; and (vi) all current and former affiliates, committees (including the official committee of unsecured creditors appointed in the US Proceedings and each of its members), officers, directors, shareholders, employees and advisers, including legal and financial advisers, of each of the foregoing; <u>provided</u> that the US Released Persons shall not include any of the Excluded Persons.

b.     "<u>Cayman Released Persons</u>" shall mean: (i) Vantage; (ii) each of the JOLs; (iii) all persons claiming through the Vantage estate; and (iv) all current and former affiliates, committees (including the liquidation committee), officers, directors, shareholders, employees and advisers, including legal and financial advisers, of each of the foregoing; <u>provided</u> that the Cayman Released Persons shall not include any of the Excluded Persons.

#5210601

      c.    "Excluded Persons" shall mean (i) Su other than in his capacity as a shareholder, officer, director and/or affiliate of any of the US Debtors; (ii) F3 other than in its capacity as a shareholder, officer, director and/or affiliate of any of the US Debtors; and (iii) all affiliates, officers, directors, shareholders, employees and advisers, including legal and financial advisers, of each of the foregoing, in each case only as to Claims (defined below) that such person has asserted or could assert as a direct Claim against any other such person in respect of the matters that are the subject of the Vantage-Su Claims.

      d.    "Claims", as held by or could be asserted against any person, shall have the broadest possible meaning under US, Cayman Islands and any other applicable law (collectively, "Applicable Law"), including each and every claim, cause of action, obligation, suit, judgment, damage, debt, right, remedy and liability of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising prior to or based on acts (or failures to act) taken (or not taken) from the beginning of time through the Effective Date, inclusive.

      e.    Release by US Debtors. On the Effective Date, for good and valuable consideration, to the fullest extent permissible under Applicable Law, each of the US Debtors, on its own behalf and as representative of its estate, shall, and shall be deemed to, completely and forever irrevocably release, waive, void, extinguish and discharge unconditionally, each and all of the Cayman Released Persons and the DIP Lender, of and from any and all Claims; provided that nothing herein shall constitute a release of any Claims that may arise in connection with enforcement of the terms of this Agreement.

      f.    Release by Vantage. On the Effective Date, for good and valuable consideration, to the fullest extent permissible under Applicable Law, each of the JOLs and Vantage shall, and shall be deemed to, completely and irrevocably forever release, waive, void, extinguish and discharge unconditionally, each and all of the US Released Persons, of and from any and all Claims, in respect of the Share Proceeds Amount, the Sold Shares, and the Pledged Shares still in the possession of the US Debtors or in the registry of the US Court; provided that nothing herein shall constitute a release of any Claims that may arise in connection with enforcement of the terms of this Agreement.

      g.    Injunction. The US Approval Order shall include, in addition to what is set forth in paragraph 5 below, a permanent injunction against each of the US Released Persons and each of the Cayman Released Persons from pursuing or asserting any Claims in respect of any of the Claims released in this Agreement and in the US Approval Order.

    4.    Effect on Vantage-Su Claims. Other than as expressly provided herein, each of the Parties intends, and the US Approval Order shall expressly provide, that nothing in this Agreement or the US Approval Order shall have any effect on any Claims in any current or future Vantage-Su Claims. Vantage, the JOLs and persons claiming through either of them shall not include or involve any of the US Released Persons (in their capacity as such but excluding any capacity they may have as an Excluded Person) in the Vantage-Su Claims, whether as additional defendants, impleaded persons, judgment debtors, or otherwise.

#5210601

5.    <u>Effect on DIP Facility and DIP Lender</u>. Without limiting any other provision of this Agreement or the releases set forth herein, each of the Parties intends, and the US Approval Order shall expressly provide, that, upon the Effective Date, the DIP Facility shall be deemed to have been fully, finally and indefeasibly paid in full and that any and all Claims, demands and liabilities against the DIP Lender, including in respect of the Share Proceeds Amount, the Pledged Shares and the F3 Shares by any of the US Released Persons, the Cayman Released Persons and the Excluded Persons shall be completely and forever irrevocably released, waived, voided, extinguished and discharged unconditionally, and the US Approval Order shall include an injunction with respect to such Claims; <u>provided</u> that, if any part of such releases or injunction are reversed or modified on appeal or otherwise held to be unenforceable, such releases and injunction would, in the sole discretion of the DIP Lender, be declared null and void ab initio by providing notice of same to the US Debtors, who will then file a notice to such effect with the US Court. In such event, the DIP Lender shall no longer be deemed to have been fully, finally and indefeasibly paid in full and shall have all the rights available to it under the DIP Facility as if this Agreement and the US Approval Order had never been entered into or issued insofar as they affect the rights of the DIP Lender. The foregoing would not have any effect on this Agreement or the US Approval Order to the extent that they do not relate to such releases and injunction.

6.    <u>Conditions to Effectiveness</u>. This Agreement shall become binding upon the US Debtors, the US Debtors' estates and Vantage upon the latest to occur of the following (the date of such latest occurrence, the "<u>Effective Date</u>"):

a.    Entry of the US Approval Order approving this Agreement in form and substance satisfactory to the US Debtors, the JOLs and the DIP Lender; Vantage shall not be required to participate in the US Court with respect to the motion or hearing in respect of the US Approval Order other than to approve the form of the US Approval Order, and the US Debtors shall undertake to defend and resist (at their own expense) any attempt by any party to (i) oppose the making or entry of the US Approval Order or (ii) require that Vantage or JOLs participate in such proceedings;

b.    Occurrence of the fifteenth calendar day after entry on the docket of the US Court of the US Approval Order unless there shall then be in effect a stay of the US Approval Order, in which case occurrence of the first calendar day on which (i) such stay is no longer in effect and (ii) the US Approval Order is still enforceable in accordance with its terms; and

c.    An order being made by the Cayman Court in form and substance satisfactory to the JOLs, the US Debtors and the DIP Lender sanctioning this settlement (unless such condition is waived in writing by the JOLs).

7.    <u>Payment</u>. The US Debtors' lawyers, Bracewell LLP, shall deliver by email to Vantage's Cayman Islands lawyers, Maples and Calder, a copy of the ECF filing of the notice of the occurrence of the Effective Date. Promptly after Maples and Calder acknowledges receipt of such email, the US Debtors shall pay the Settlement Payment to Vantage by wire transfer to an account to be identified.

#5210601

8.   <u>Timing of the Essence</u>. The Parties agree and it is an essential component of this Agreement that timing is of the essence. Accordingly, the Parties agree that they shall use commercially reasonable efforts to consummate this Agreement promptly upon the occurrence of the Effective Date even if an appeal of the Approval Order has been filed, unless there is a stay pending appeal.

9.   <u>Further Acts</u>. Each of the Parties undertakes, at its own expense, to sign, perfect, do, execute and register all such further assurances, documents, acts and things as the other Party may reasonably require for the purpose of giving effect to the terms of this Agreement.

10.   <u>Governing Law; Enforcement</u>. This Agreement shall be governed by the laws of the State of Texas and shall be enforceable in the US Court. Vantage consents to the personal and subject matter jurisdiction of the US Court with respect to such enforcement. The US Approval Order shall provide that nothing in this Agreement or the US Approval Order shall otherwise be construed as a submission by Vantage to, or a recognition by the US Court of, personal jurisdiction over Vantage, with respect to any other matter. The US Court shall retain jurisdiction to enforce this Agreement and the US Approval Order, including at the direct request of the DIP Lender as a third party beneficiary under this Agreement. Without limiting the foregoing, Vantage irrevocably consents that the US Debtors can file the US Approval Order in the Vantage-Su Claims as an absolute defense to any Claims asserted by Vantage against any US Released Person in such litigation in respect of the Share Sale Proceeds and the Pledged Shares. To the extent Vantage seeks enforcement in the US Court, it shall be entitled to do so directly without any requirement that the JOLs seek recognition pursuant to chapter 15 of the Bankruptcy Code. The US Approval Order shall provide that, if a person seeks to enforce this Agreement and the US Approval Order after the US Proceedings are closed, such person shall be entitled on shortened notice to seek to reopen the US Proceedings in order to invoke such jurisdiction.

11.   <u>Costs</u>. Each Party shall bear its own costs, including professional fees and expenses, in connection with this Agreement and all matters contemplated herein.

12.   <u>Headings</u>. The headings contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

13.   <u>Successors</u>. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, predecessors, successors, assigns, parent and subsidiary corporations, officers, directors, employees, agents, attorneys, partners, representatives and employees, as applicable, including, without limitation, any examiner, chapter 11 or 7 trustee, liquidating trustee, receiver, plan administrator or reorganized debtors.

14.   <u>Third Party Beneficiary</u>. The DIP Lender is an express third party beneficiary of this Agreement and shall be entitled to seek enforcement of this Agreement and the US Approval Order in its own name.

15.   <u>Authorized Signatories</u>.

a.   Mr. Esben Christensen represents that he has been appointed by the US Court as the sole authority with respect to each of the US Debtors and that he is authorized to

-5-

sign this Agreement on behalf of the US Debtors and their estates and, subject to the occurrence of the Effective Date, to bind them hereto.

        b.     Vantage represents that Mr. Alex Lawson and Mr. Kris Beighton have been appointed by the Cayman Court as JOLs with respect to Vantage and that each of them is authorized to sign this Agreement on behalf of Vantage and, subject to the occurrence of the Effective Date, to bind it hereto.

16.    <u>Whole Agreement</u>. This Agreement and the documents referred to herein represent the whole agreement between the Parties, and supersedes any prior representation or agreement made by or on behalf of either Party relating to the subject matter of this Agreement. Any variation to the terms of this Agreement must be agreed in writing and shall be signed by or on behalf of each of the Parties.

17.    <u>Signed Agreement</u>. The Parties agree that this Agreement can be signed in counterpart and delivered to the other Party as a PDF attachment to an email delivered to the other Party's counsel, with the PDF signature pages to serve for all purposes as binding evidence of a Party's agreement to this Agreement.

ACKNOWLEDGED AND AGREED

THE US DEBTORS,

By _____        Date 7/11/16
    Esben Christensen
    Sole Authority

VANTAGE

By _____        Date _____
    Alex Lawson
    Joint Official Liquidator
    For and on behalf of
    Vantage Drilling Company (in official liquidation)

#5210601

sign this Agreement on behalf of the US Debtors and their estates and, subject to the occurrence of the Effective Date, to bind them hereto.

b.      Vantage represents that Mr. Alex Lawson and Mr. Kris Beighton have been appointed by the Cayman Court as JOLs with respect to Vantage and that each of them is authorized to sign this Agreement on behalf of Vantage and, subject to the occurrence of the Effective Date, to bind it hereto.

16.      <u>Whole Agreement</u>. This Agreement and the documents referred to herein represent the whole agreement between the Parties, and supersedes any prior representation or agreement made by or on behalf of either Party relating to the subject matter of this Agreement. Any variation to the terms of this Agreement must be agreed in writing and shall be signed by or on behalf of each of the Parties.

17.      <u>Signed Agreement</u>. The Parties agree that this Agreement can be signed in counterpart and delivered to the other Party as a PDF attachment to an email delivered to the other Party's counsel, with the PDF signature pages to serve for all purposes as binding evidence of a Party's agreement to this Agreement.

ACKNOWLEDGED AND AGREED

THE US DEBTORS

By _____      Date _____
    Esben Christensen
    Sole Authority

VANTAGE

By _____      Date  11 July 2016
    Alex Lawson
    Joint Official Liquidator
    For and on behalf of
    Vantage Drilling Company (in official liquidation)

#5210601