In the United States Bankruptcy Court
For the Southern District of Texas
Houston Division

| | |
|---|---|
| IN RE: § | |
| § | **Chapter 11** |
| TMT PROCUREMENT CORPORATION, § | Case No. 13-33763 |
| *et al.*[1] § | Jointly Administered |
|     Debtors § | |

**TAIWAN MARITIME TRANSPORTATION CO. LTD.'S MOTION TO CONSOLIDATE OBJECTION WITH ADVERSARY PROCEEDING AND OMNIBUS RESPONSE TO JOINDER TO AND ADOPTION OF THE EXPEDITED FIRST OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CLAIMS OF NON-DEBTOR AFFILIATES OF THE DEBTORS BECAUSE (I) THE CLAIMS LACK SUPPORTING INFORMATION AND (II) THE CLAIMS ASSERT INTERESTS RATHER THAN CLAIMS**

[Related to Doc. 2627, 2758, 2760, and 2761]

Taiwan Maritime Transportation Co. Ltd. ("Taiwan Maritime") files this Motion to Consolidate Objection with Adversary Proceeding and Omnibus Response to the Joinder to and Adoption of the Expedited First Omnibus Objection of the Official Committee of Unsecured Creditors to Claims of Non-Debtor Affiliates of the Debtors Because (I) The Claims Lack Supporting Information and (II) The Claims Assert Interests Rather Than Claims by Wilmington Trust, National Association ("Wilmington Trust") (Doc. 2758), Bank Sinopac (Doc. 2760), and MRMBS II LLC ("MRMBS") (Doc. 2761).

---

[1] The Debtors in these Chapter 11 cases are: (1) A Whale Corporation; (2) B Whale Corporation; (3) C Whale Corporation; (4) D Whale Corporation; (5) E Whale Corporation; (6) G Whale Corporation; (7) H Whale Corporation; (8) A Duckling Corporation; (9) F Elephant Inc.; (10) A Ladybug Corporation; (11) C Ladybug Corporation; (12) D Ladybug Corporation; (13) A Handy Corporation; (14) B Handy Corporation; (15) C Handy Corporation; (16) B Max Corporation; (17) New Flagship Investment Co., Ltd.; (18) RoRo Line Corporation; (19) Ugly Duckling Holding Corporation; (20) Great Elephant Corporation; and (21) TMT Procurement Corporation.

## FACTUAL BACKGROUND

1.  The Debtors are members of a group of entities formerly known as the TMT Group. The TMT Group was a collection of entities providing worldwide sea-borne transportation services and included individual vessel-owning companies (e.g., A Whale Corporation, which owned the *M/V A Whale*) as well as other entities that provided various services to the vessel-owning companies (e.g., NOS Ship Agency PTE Ltd. provided management services for many of the vessel-owning companies).

2.  While all the entities within the TMT Group were related, they did not have completely common ownership. For example, many of the vessel-owning companies were owned by Nobu Su, but C Ladybug Corporation was owned 35% by Mr. Su and 65% by New Flagship Investment Co. Ltd. ("New Flagship"). New Flagship, in turn, was owned by Mr. Su (0.09%), Morimoto Chiharu (0.05%), Taiwan Maritime Transportation Co. Ltd. (20.23%), and F2 Capital (79.63%). As another example, most of the Elephant vessel-owning companies were owned by Great Elephant Corporation, which was owned by Mr. Su (67%) and TMT Energy Services Corporation (33%). As a final example, RoRo Line Corporation was owned solely by Rika Morimoto.[2]

3.  From time to time, one member of the TMT Group (e.g., A Whale Corporation) would not have sufficient cash to cover operating or other expenses. When that happened, another member of the TMT Group with a cash surplus (e.g., Taiwan Maritime) would advance funds with the understanding that it would be paid back. When that happened, the advancing entity recorded the transaction to an account receivable (specifically, a related party receivable), and the receiving

---

[2] For a specific listing of all the Debtors and their corporate structure as of June 2013, *see* Doc. 193 at 21.

entity recorded it to an account payable (specifically, a related party payable). From time to time, the parties involved would net out their payables and receivables.

4. When the Debtors filed for bankruptcy in June 2013, Taiwan Maritime had net payables owed from 9 members of the TMT Group, in the aggregate amount of approximately $2.6 million.[3]

## PROCEDURAL BACKGROUND

5. On June 20, 2013, the Debtors commenced their individual bankruptcies by filing petitions for relief under Chapter 11 of the Bankruptcy Code.

6. During the time for submitting claims, Taiwan Maritime filed proofs of claim seeking payment on their net payables (the "Claims").

7. On June 19, 2015, the Official Committee of Unsecured Creditors (the "UCC") filed its Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502 against Taiwan Maritime (the "Adversary Proceeding"). In the Adversary Proceeding, the UCC claimed that Taiwan Maritime had been the recipient of preferential and fraudulent transfers and therefore Taiwan Maritime's Claims should be disallowed. (*See* Adversary No. 15-03158, Doc. 1.) The alleged preferential and fraudulent transfers were payments made by the Debtors to Taiwan Maritime to repay funds advanced by Taiwan Maritime and recorded as a related party payable.

8. On September 30, 2016, the UCC filed its Expedited First Omnibus Objection to Claims of Non-Debtor Affiliates of the Debtors Because (I) The Claims Lack Supporting

---

[3] The claims were filed against A Handy Corporation (Claim No. 238), A Whale Corporation (Claim No. 246), B Handy Corporation (Claim No. 258), B Max Corporation (Claim No. 218), C Handy Corporation (Claim No. 271), F Elephant Inc. (Claim No. 292), New Flagship Investment Co., Ltd. (Claim No. 314), RoRo Line Corporation (Claim No. 327), and TMT Procurement Corporation (Claim No. 335).

3

Information and (II) The Claims Assert Interests Rather Than Claims (the "Omnibus Objection"). (Doc. 2627.) The UCC objected to 89 proofs of claim filed in this proceeding, including Taiwan Maritime's Claims, in the aggregate amount of just under $530 million. By filing the Omnibus Objection, the UCC commenced a contested matter with respect to Taiwan Maritime's Claims (the "Claims Objection Proceeding").

9. On November 21, 2016, the Court entered a Stipulation and Agreed Order Regarding Mediation, under which the UCC, Taiwan Maritime, and several other parties agreed to mediate both the Claims Objection Proceeding and the Adversary Proceeding. (Doc. 2666.)

10. On December 21, 2016, the Court entered an order granting in part the Omnibus Objection. (Doc. 2687.) In its order, the Court expressly carved out and abated the UCC's objection to Taiwan Maritime's Claims so that the parties could mediate. (Doc. 2687 at 1, 6–7.)

11. On January 6, 2017, the parties entered into a Settlement Term Sheet (the "Settlement Agreement"), the terms of which were intended to be incorporated into a Chapter 11 plan, subject to court approval. Under the terms of the Settlement Agreement, the parties resolved all of the remaining claims in both the Claims Objection Proceeding and the Adversary Proceeding. However, the Court has not yet approved a Chapter 11 plan in this case, so the Settlement Agreement remains pending and unconsummated.

12. On July 10, 2017, the Court entered a Case Management Order, setting July 20, 2017, as the deadline for parties-in-interest to object to Taiwan Maritime's Claims; August 10, 2017, as the deadline for Taiwan Maritime to respond to any such objections; and September 25, 2017, as the hearing date on any filed objections. (Doc. 2749.)

13. On July 20, 2017, Wilmington Trust, Bank Sinopac, and MRMBS each filed joinders in the Omnibus Objection (collectively, the "Joinders"). (Doc. 2758; Doc. 2760;

4

Doc. 2761.) Each of the Joinders is nearly identical. Each notes that the Omnibus Objection was filed and that a ruling on Taiwan Maritime's Claims was held in abeyance. The Joinders then join in the arguments set forth in Omnibus Objection and ask the Court to disallow Taiwan Maritime's Claims. The Joinders did not assert any arguments other than those already raised by the UCC, so the Joinders' objections should be considered as part of the Claims Objection Proceeding.

14. Taiwan Maritime now files this response, asking the Court (1) to consolidate the Claims Objection Proceeding with the Adversary Proceeding; (2) to continue holding Taiwan Maritime's Claims in abeyance until a Chapter 11 plan is confirmed or this case is converted to a case under Chapter 7; or (3) alternatively, to allow Taiwan Maritime's Claims.

## ARGUMENTS & AUTHORITIES

**A.   The Court should consolidate the Claims Objection Proceeding with the Adversary Proceeding.**

15. Fed. R. Civ. P. 42 applies to adversary proceedings through Fed. R. Bankr. P. 7042. Under Federal Rule 42, courts may consolidate actions that involve a common question of law or fact. Fed. R. Civ. P. 42(a). Where the actions involve both common questions of law or fact *and* common parties, courts commonly grant motions to consolidate, absent a showing of demonstrable prejudice. *In re Wen Jing Huang*, 509 B.R. 742, 747–48 (Bankr. D. Mass. 2014). The Court should consolidate the Claims Objection Proceeding with the Adversary Proceeding because they involve common parties and common questions of law and fact.

16. First, the Claims Objection Proceeding and the Adversary Proceeding involve common questions of law and fact. In the Claims Objection Proceeding, the UCC has alleged that funds transferred from Taiwan Maritime to the Debtors were really just injections of capital and therefore equity, as opposed to debt. In the Adversary Proceeding, however, the UCC has complained that funds transferred by the Debtors to Taiwan Maritime were preferential or

5

fraudulent transfers and alleged that Taiwan Maritime's Claims should be denied as a result. The question for the Court in both proceedings is whether the transfer of funds between Taiwan Maritime and the Debtors was a series of equity transactions or debt transactions. In determining that question, the Court will consider evidence such as:

- the intent of the parties;

- whether Taiwan Maritime was a shareholder of the Debtors, and vice-versa;

- the extent to which Taiwan Maritime participated in the management of the Debtors;

- the ability of the Debtors to obtain funds from other sources (such as Wilmington Trust, Bank Sinopac, and MRMBS);

- the capital structure of the Debtors relative to the debt;

- the formal indicia of the arrangements (such as how the transactions were recorded in the parties' books and records); and

- the timing of the transactions in relation to the formation of the Debtors.

*See Fin Hay Realty Co. v. United States*, 398 F.2d 694, 696 (3d Cir. 1968) (setting forth a 16-factor test for determining whether a transaction was a debt or equity transaction, referenced by *Arch Petroleum, Inc. v. Sharp*, 958 S.W.2d 475, 477 n.3 (Tex. App.—Austin 1997, no pet.)).

17.  Second, the same evidence will be proffered in both the Claims Objection Proceeding and the Adversary Proceeding. For example, the Court will consider such evidence as the manner in which the Debtors' books and records treat payments to and from Taiwan Maritime; documentation such as invoices, checks, wire transfers, and emails requesting the transfer of funds; and testimony from the principals and bookkeepers of both the Debtors and Taiwan Maritime. Thus, the Claims Objection Proceeding and the Adversary Proceeding involve common questions of law and fact.

18. Third, the Claims Objection Proceeding and the Adversary Proceeding involve the same parties: the UCC, the Debtors, and Taiwan Maritime.

19. Finally, there is no demonstrable prejudice, except perhaps to Taiwan Maritime if the two proceedings are not consolidated.

20. Accordingly, the Court should consolidate the Claims Objection Proceeding and the Adversary Proceeding.

**B. The Court should continue holding Taiwan Maritime's Claims in abeyance until a Chapter 11 plan is confirmed or this case is converted to a case under Chapter 7.**

21. The Debtors, the UCC, and Taiwan Maritime have resolved Taiwan Maritime's Claims through a Settlement Agreement. Upon confirmation of a Chapter 11 plan, Taiwan Maritime will waive its claims against the Debtors in exchange for, among other things, the UCC dismissing the Adversary Proceeding. If the Court confirms a Chapter 11 plan incorporating the terms of the Settlement Agreement, then the Joinders will be moot, and the Court will have expended a substantial amount of time and energy resolving issues that ultimately had no effect on the Debtors' reorganization. Accordingly, whether the Court consolidates the two proceedings or not, the Court should continue holding Taiwan Maritime's Claims in abeyance until a Chapter 11 plan is confirmed or this case is converted to a case under Chapter 7.

**C. Alternatively, the Court should allow Taiwan Maritime's Claims.**

    **1. The amount of the Claims is not in dispute.**

22. The UCC did not argue in the Omnibus Objection that Taiwan Maritime's Claims were overstated. On the contrary, the Omnibus Objection noted that Taiwan Maritime's Claims are listed both on the Debtors' schedules and in the Debtors' books and records. (Doc. 2627 at 6.) Thus, the amount of the Claims is not in dispute, only whether it was a debt or an equity transaction.

### 2. The Claims arise from debt transactions.[4]

23. The UCC claimed that Taiwan Maritime's Claims arose from equity transactions rather than debt transactions. If so, the UCC argued, then Taiwan Maritime's Claims should be recharacterized as interests and disallowed.

24. The question of whether a given transaction is for debt or equity is difficult and involves the consideration of a large number of factors. *See, e.g., Jones v. United States*, 659 F.2d 618, 622 n.12 (5th Cir. 1981) (11 factors); *Estate of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972) (13 factors); *Fin Hay Realty Co. v. United States*, 398 F.2d 694, 696 (3d Cir. 1968) (16 factors). When those three lists are compared and collated, the result is a list of 21 factors, more or less divisible into 6 categories of factors. All factors should be considered, though not all will be given equal weight. *Lothian*, 650 F.3d at 544.

25. *Does it look like debt?* The *Jones*, *Mixon*, and *Fin Hay Realty* courts identified five factors that each address whether the transaction in question looks like debt: (a) the formal indicia, if any, of the agreement; (b) what the instrument memorializing the transaction is entitled; (c) the presence or absence of a fixed maturity date; (d) the presence or absence of a fixed interest rate; and (e) the source of the interest payments. *See Jones*, 659 F.2d at 622 n.12 (factors 1, 2, and 10); *Mixon*, 464 F.2d at 402 (factors 1, 2, and 10); *Fin Hay Realty*, 398 F.2d at 696 (factors 7, 10, 12, and 13). Here, the debt arose from a series of transfers of funds from one entity to the other without formal agreements or provisions for the payment of interest or repayment by a certain date. The first set of factors is neutral.

---

[4] In determining that the Claims arise from debt transactions, the Court will necessarily be overruling the UCC's second objection (i.e., that the Claims were for equity rather than debt).

26. *Does it look like equity?* The second set of *Jones-Mixon-Fin Hay Realty* factors asks whether the transaction looks like equity: (a) the identity, if any, between the creditors and shareholders; (b) the extent to which the creditor formally or informally participated in the management of the debtor; (c) the extent to which the creditor or the debtor could redeem the debt for equity; and (d) the source of the funds. *See Jones*, 659 F.2d at 622 n.12 (factors 3, 5, and 9); *Mixon*, 464 F.2d at 402 (factors 3, 5, and 9); *Fin Hay Realty*, 398 F.2d at 696 (factors 2, 3, 9, 14, and 15). Here, there is no evidence that Taiwan Maritime was a shareholder in any of the Debtors, that it participated in the management of the Debtors, or that its debt could be redeemed for equity. There is some evidence that the ultimate source of the funds was Mr. Su, who had an interest in both Taiwan Maritime and the Debtors. This factor tends to support a finding that the transactions were for debt.

27. *What kind of risk is involved?* The third set of *Jones-Mixon-Fin Hay Realty* factors considers the kind of risk involved in extending the cash: (a) whether the creditor had a right to enforce payment; (b) whether the debtor failed to pay or seek a postponement when the debt came due; and (c) whether there was any contingency on the obligation to repay. *See Jones*, 659 F.2d at 622 n.12 (factor 4); *Mixon*, 464 F.2d at 402 (factors 4 and 13); *Fin Hay Realty*, 398 F.2d at 696 (factors 6 and 11). Here, Taiwan Maritime assumed the same kind of risk as every other creditor: that the Debtors would go out of business and Taiwan Maritime's receivable would not be paid. This set of factors tends to support a finding that the transactions were for debt.

28. *How was this creditor treated with respect to other creditors?* The fourth set of *Jones-Mixon-Fin Hay Realty* factors considers the relationship between this creditor and the other creditors: (a) the relative positions of the various creditors; (b) the adequacy of the capitalization vis-à-vis debt; and (c) the ability of the debtor to obtain funds from elsewhere. *See Jones*, 659

F.2d at 622 n.12 (factors 6, 8, and 11); *Mixon*, 464 F.2d at 402 (factors 6, 8, and 11); *Fin Hay Realty*, 398 F.2d at 696 (factors 4, 5, and 8). Here, there is no evidence that Taiwan Maritime was favored over the Debtors' other creditors in the ordinary course of business. Additionally, there is substantial evidence that the Debtors were able to obtain loans elsewhere: the fact that several major banks extended loans to the Debtors to purchase capital. In fact, Wilmington Trust, Bank Sinopac, and MRMBS (or their predecessors in interest) each extended loans to some of the Debtors. This set of factors tends to support a finding that the transactions were debt.

29.   *What were the funds used for?* The fifth set of *Jones-Mixon-Fin Hay Realty* factors asks what the funds were used for: (a) the extent to which the funds were used to acquire capital assets; and (b) the timing of the advances with respect to the formation of the debtor. *See Mixon*, 464 F.2d at 402 (factor 12); *Fin Hay Realty*, 398 F.2d at 696 (factor 16). Here, the funds were advanced several years after the Debtors were formed, and, as the UCC acknowledged, the funds were not used to acquire capital assets. *See* Doc. 2627 at 12. This set of factors tends to support a finding that the transactions were debt.

30.   *What did the parties intend?* The last *Jones-Mixon-Fin Hay Realty* factor asks simply, What did the parties intend by the transaction? *See Jones*, 659 F.2d at 622 n.12 (factor 7); *Mixon*, 464 F.2d at 402 (factor 7); *Fin Hay Realty*, 398 F.2d at 696 (factor 1). Here, the evidence is that the parties intended to treat the transaction as debt. The transfers were recorded as related party payables, not as capital contributions. *See* Doc. 2627 at 6. This factor tends to support a finding that the transactions were debt.

31.   To summarize: The transactions do not look exactly like debt, but nor do they look like equity. Taiwan Maritime assumed the same kind of risk as every other creditor and did not receive any special treatment vis-à-vis other creditors. The funds were not used for startup or

capital costs. And the evidence shows that the parties intended that the transactions be debt. Accordingly, the Court should determine that the transactions were for debt and allow the Claims.

3. **The UCC's objection to the formal sufficiency of Taiwan Maritime's Claims is not a ground for disallowing the Claims.**

32. The UCC objected to Taiwan Maritime's Claims under Fed. R. Bankr. P. 3007(d)(6), that Taiwan Maritime's Claims were presented in a form that does not comply with applicable rules, and . . . the objector is unable to determine the validity of the claim because of the noncompliance." Fed. R. Bankr. P. 3007(d)(6). Specifically, the UCC complains that Taiwan Maritime did not submit sufficient documentation to determine the validity of Taiwan Maritime's Claims.

33. Whether the objection to formal sufficiency has merit or not, formal insufficiency is not one of the grounds set forth in 11 U.S.C. § 502 for disallowing any part of a claim. In light of the foregoing discussion and the Debtors' books and records, the Court should overrule the objection and allow Taiwan Maritime's Claims.

## ADMISSIONS AND DENIALS

A. **The UCC's Objection (Doc. 2627)**

34. Taiwan Maritime admits the allegations in paragraph 1 of the UCC's Objection.

35. In response to paragraph 2, Taiwan Maritime asserts that the docket is the best record of the various deadlines and bar dates in this case.

36. In response to paragraph 3, Taiwan Maritime asserts that the docket is the best record of what pleadings were filed in this case and when.

37. In response to paragraph 4, Taiwan Maritime asserts that the docket is the best record of what pleadings were filed in this case and when.

38. In response to paragraph 5, Taiwan Maritime asserts that the docket is the best record of what pleadings were filed in this case and when.

39. In response to paragraph 6, Taiwan Maritime asserts that the docket is the best record of what pleadings were filed in this case and when.

40. In response to paragraph 7, Taiwan Maritime admits that the UCC was authorized to file the Objection.

41. Taiwan Maritime admits that the law cited in paragraph 8 speaks for itself.

42. Taiwan Maritime admits that the law cited in paragraph 9 speaks for itself.

43. Taiwan Maritime admits that the law cited in paragraph 10 speaks for itself.

44. Taiwan Maritime admits that the law cited in paragraph 11 speaks for itself.

45. Taiwan Maritime admits that the applicable Official Form B10 cited in paragraph 12 speaks for itself.

46. Taiwan Maritime admits that the law cited in paragraph 13 speaks for itself.

47. In response to paragraph 14, Taiwan Maritime admits that the UCC's Objection does not include a demand for relief of a kind specified in Fed. R. Bankr. P. 7001, but the same or substantially similar relief has been sought by the UCC in Adversary Proceeding No. 15-03158.

48. In response to paragraph 15, Taiwan Maritime admits that the UCC's Objection is based solely on the grounds set forth in Fed. R. Bankr. P. 3007(d)(6) and (d)(7), but the same or substantially similar relief has been sought by the UCC in Adversary Proceeding No. 15-03158.

49. In response to paragraph 16, Taiwan Maritime denies that the omnibus objection is in compliance with Fed. R. Bankr. P. 3007(e)(3). Otherwise, Taiwan Maritime admits the allegations in paragraph 16.

50. In response to paragraph 17, Taiwan Maritime asserts that the docket is the best record of what pleadings were filed in this case and when.

51. In response to paragraph 18, Taiwan Maritime admits that the affidavit of Esben Christensen was attached to the UCC's Objection. Taiwan Maritime denies that the affidavit was based on Mr. Christensen's personal knowledge.

52. In response to paragraph 19, Taiwan Maritime admits that the first ground for objection is within Fed. R. Bankr. P. 3007(d)(6) and that the second ground for objection is within Fed. R. Bankr. P. 3007(d)(7). Taiwan Maritime denies the other allegations in paragraph 19.

53. Taiwan Maritime is without sufficient information to admit or deny the allegations in paragraph 20.

54. In response to paragraph 21, Taiwan Maritime is without sufficient knowledge to admit or deny whether the UCC has reviewed all general unsecured proofs of claim that are or appear to be Affiliate Claims, as that term is defined in the Objection. Taiwan Maritime otherwise admits the allegations in paragraph 21.

55. In response to paragraph 22, Taiwan Maritime admits that none of the claims submitted by Taiwan Maritime (the "Claims") attached the writing (if any) on which the claim was based and that each claim set forth "Related Party Payable" as the basis for the claim. The Claims are supported by the books and records of the Debtors, to which Taiwan Maritime did not have access. Taiwan Maritime denies that the proofs of claim were not in compliance with the applicable rules.

56. In response to paragraph 23, Taiwan Maritime is without sufficient information to admit or deny what information the UCC had access to. Taiwan Maritime admits that the Claims were listed in the Debtors' books and records. Taiwan Maritime is without sufficient information

to admit or deny whether the books and records had the required detail to assess the validity of the Claims.

57. Taiwan Maritime denies the allegations in paragraph 24.

58. In response to paragraph 25, Taiwan Maritime admits that the UCC objects to the allowance of the Claims.

59. Taiwan Maritime admits that the law cited in paragraph 26 speaks for itself.

60. Taiwan Maritime admits that the law cited in paragraph 27 speaks for itself.

61. In response to paragraph 28, Taiwan Maritime admits that the cited testimony speaks for itself but denies the legal effect asserted by the UCC.

62. In response to paragraph 29, Taiwan Maritime admits that there is no instrument memorializing the transaction other than the books and records of the Debtors.

63. Taiwan Maritime admits the allegations in paragraph 30.

64. Taiwan Maritime denies the allegations in paragraph 31.

65. Taiwan Maritime denies the allegations in paragraph 32.

66. Taiwan Maritime denies the allegations in paragraph 33.

67. Taiwan Maritime denies the allegations in paragraph 34.

68. Taiwan Maritime denies the allegations in paragraph 35.

69. Taiwan Maritime denies the allegations in paragraph 36.

70. Taiwan Maritime denies the allegations in paragraph 37.

71. Taiwan Maritime admits the allegations in paragraph 38.

72. Taiwan Maritime denies the allegations in paragraph 39.

73. Taiwan Maritime admits that the law cited in paragraph 40 speaks for itself.

74. Taiwan Maritime admits the allegations in paragraph 41.

75. Taiwan Maritime admits the allegations in paragraph 42.

76. Taiwan Maritime denies the allegations in paragraph 43.

77. The allegations in paragraph 44 need not be admitted or denied.

78. The allegations in paragraph 45 need not be admitted or denied.

79. The allegations in paragraph 46 need not be admitted or denied.

80. In response to paragraph 47, Taiwan Maritime admits that the UCC requested expedited consideration of its Objection; otherwise, Taiwan Maritime denies the allegations in paragraph 47.

81. In response to paragraph 48, Taiwan Maritime admits that the UCC sought a shortening of only 2 days.

82. In response to paragraph 49, Taiwan Maritime asserts that the docket is the best evidence of what was filed in this case, when, and on whom it was served.

**B.  Wilmington Trust's Joinder in the UCC's Objection (Doc. 2758)**

83. In response to paragraph 1 of Wilmington Trust's Joinder in the UCC's Objection (Doc. 2758), Taiwan Maritime admits that the UCC filed an Objection, which speaks for itself.

84. In response to paragraph 2, Taiwan Maritime admits that the Court's order of December 21, 2016, speaks for itself.

85. Taiwan Maritime admits the allegations in paragraph 3.

86. In response to paragraph 4, Taiwan Maritime admits that Wilmington Trust filed a joinder in the UCC's Objection. Taiwan Maritime adopts and incorporates as if restated here its admissions and denials with respect to the UCC's Objection.

**C.    Bank Sinopac's Joinder in the UCC's Objection (Doc. 2760)**

87.    In response to paragraph 1 of Bank Sinopac's Joinder in the UCC's Objection (Doc. 2760), Taiwan Maritime admits that the UCC filed an Objection, which speaks for itself.

88.    In response to paragraph 2, Taiwan Maritime admits that the Court's order of December 21, 2016, speaks for itself.

89.    Taiwan Maritime admits the allegations in paragraph 3.

90.    In response to paragraph 4, Taiwan Maritime admits that Bank Sinopac filed a joinder in the UCC's Objection. Taiwan Maritime adopts and incorporates as if restated here its admissions and denials with respect to the UCC's Objection.

**D.    MRMBS's Joinder in the UCC's Objection (Doc. 2761)**

91.    In response to paragraph 1 of MRMBS's Joinder in the UCC's Objection (Doc. 2761), Taiwan Maritime admits that the UCC filed an Objection, which speaks for itself.

92.    In response to paragraph 2, Taiwan Maritime admits that the Court's order of December 21, 2016, speaks for itself.

93.    Taiwan Maritime admits the allegations in paragraph 3.

94.    In response to paragraph 4, Taiwan Maritime admits that Wilmington Trust filed a joinder in the UCC's Objection. Taiwan Maritime adopts and incorporates as if restated here its admissions and denials with respect to the UCC's Objection.

**CONCLUSION**

Taiwan Maritime filed Claims in this proceeding to which the UCC and, recently, Wilmington Trust, Bank Sinopac, and MRMBS have objected. The UCC also filed an Adversary Proceeding asking that Taiwan Maritime's Claims be disallowed. Because determination of the objections shares common questions of law and fact with determination of the Adversary Proceeding, the Court should consolidate the two proceedings. Additionally, because both Taiwan

Maritime's Claims and the Adversary Proceeding have been tentatively resolved, pending approval by the Court, the Court should hold Taiwan Maritime's Claims in abeyance until such time as a final resolution of the effect of the Settlement Agreement. Finally, in the alternative, if the Court determines that it should consider Taiwan Maritime's Claims now, the Court should allow the claims because the amount of the Claims is not contested, and the Claims are for debt, not equity. Taiwan Maritime prays for such and further relief to which it may be entitled.

Respectfully submitted,

**Hawash Cicack & Gaston LLP**

 /s/ Walter J. Cicack
Walter J. Cicack
Texas Bar No. 04250535
wcicack@hcgllp.com
Jeremy M. Masten
Texas Bar No. 24083454
jmasten@hcgllp.com
2118 Smith Street
Houston, Texas 77002
(713) 658-9001 – tel
(713) 658-9011 – fax

**Attorneys for Taiwan Maritime Transportation Co., Ltd.**

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served on all the parties appearing electronically through the Court's ECF system on August 10, 2017.

 /s/ Jeremy M. Masten
Jeremy M. Masten