

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| In Re: | § | Chapter 11 |
|---|---|---|
| | § | |
| A WHALE CORPORATION | § | Case No. 13-33741 |
| B WHALE CORPORATION | § | Case No. 13-33742 |
| C WHALE CORPORATION | § | Case No. 13-33743 |
| D WHALE CORPORATION | § | Case No. 13-33744 |
| E WHALE CORPORATION | § | Case No. 13-33745 |
| G WHALE CORPORATION | § | Case No. 13-33746 |
| H WHALE CORPORATION | § | Case No. 13-33747 |
| A DUCKLING CORPORATION | § | Case No. 13-33748 |
| F ELEPHANT INC | § | Case No. 13-33750 |
| A LADYBUG CORPORATION | § | Case No. 13-33751 |
| C LADYBUG CORPORATION | § | Case No. 13-33752 |
| D LADYBUG CORPORATION | § | Case No. 13-33754 |
| A HANDY CORPORATION | § | Case No. 13-33755 |
| B HANDY CORPORATION | § | Case No. 13-33756 |
| C HANDY CORPORATION | § | Case No. 13-33757 |
| B MAX CORPORATION | § | Case No. 13-33758 |
| NEW FLAGSHIP INVESTMENT CO. LTD | § | Case No. 13-33759 |
| RORO LINE CORPORATION | § | Case No. 13-33760 |
| UGLY DUCKLING HOLDING CORPORATION | § | Case No. 13-33761 |
| GREAT ELEPHANT CORPORATION | § | Case No. 13-33762 |
| TMT PROCUREMENT CORPORATION | § | Case No. 13-33763 |
| | § | |
| Debtors. | § | Jointly Administered as |
| | § | Case No. 13-33763 |

## ORDER CONFIRMING
## LENDER SETTLEMENT PLAN OF LIQUIDATION FOR ALL DEBTORS

On June 20, 2013, each of the above-captioned Debtors filed voluntary chapter 11 petitions for relief. Based on the docket in these Chapter 11 Cases, the evidentiary record and applicable law, this Order confirms, on the basis set forth herein, the Plan attached as Exhibit A, as it may have been modified on the basis indicated in paragraph 7 below. Capitalized terms set forth herein have the meanings set forth in the Plan. Unless otherwise stated herein, the findings and conclusions in the Order apply separately to each Separate Plan that is subsumed within the Plan.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. <u>Jurisdiction; Venue; Core Proceeding.</u> This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L), and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

2. <u>Bankruptcy Code § 1122(a)</u>. The classification of Claims and Interests in the Plan satisfies the requirements of Bankruptcy Code § 1122(a).

3. <u>Bankruptcy Code § 1123</u>. The contents of the Plan satisfy the requirements of Bankruptcy Code § 1123, except that Bankruptcy Code § 1123(a)(6) does not apply under the circumstances.

4. <u>Bankruptcy Code § 1124</u>. Each Class (other than an Empty Class) under the Plan is Impaired.

5. <u>Bankruptcy Code § 1125(e)</u>. The Debtors have complied with the solicitation procedures set forth in <u>ARTICLE VIII</u> of the Disclosure Statement and satisfied the good faith solicitation requirements of Bankruptcy Code § 1125(e) and the applicable Bankruptcy Rules, Local Rules, and Complex Chapter 11 General Order.

6. <u>Bankruptcy Code § 1126</u>. At the September 25, 2017 hearing on the Disclosure Statement, counsel for the holders of the Non-Debtor Affiliate Claims consented that such holders in Class 1 and Class 4 would not be entitled to vote on the Plan. All other holders of Class 1 Claims and all holders in each other Class were entitled to vote to accept or reject the Plan, including each Class of Claims for a Debtor that is not a "Cash Debtor" under the Plan, due to the possibility of a distribution of proceeds from Preserved Causes of Action.

7. <u>Bankruptcy Code § 1127.</u> All modifications (if any) made to the Plan after solicitation of votes on the Plan commenced, (i) as reflected in this Order, (ii) as set forth on the record at the Confirmation Hearing, or (iii) as reflected in the Plan at <u>Exhibit A</u>, are not material and do not adversely affect the treatment and rights of the holders of any Claim or Interest under the Plan who have not otherwise accepted such modifications; or (iv) implement a compromise approved on the record on this date, the terms of which are reflected below. Accordingly, the Debtors have satisfied Bankruptcy Code § 1127(c) and Bankruptcy Rule 3019(a) with respect to the Plan, as modified; and holders of Claims or Interests that have accepted (or are deemed to have accepted) or rejected the Plan are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of this Order.

8. <u>Bankruptcy Code § 1128</u>. The Debtors have complied with the hearing requirement of Bankruptcy Code § 1128(a) and parties-in-interest have been accorded sufficient time and opportunity to object to the Plan pursuant to Bankruptcy Code § 1128(b).

9. <u>Bankruptcy Code § 1129(a)(1)</u>. The Plan complies with all other applicable provisions of the Bankruptcy Code not expressly identified in this Order.

10. <u>Bankruptcy Code § 1129(a)(2)</u>. The Debtors are the proponent of the Plan and the Debtors have complied with the applicable provisions of the Bankruptcy Code.

11. <u>Bankruptcy Code § 1129(a)(3)</u>. The Plan has been proposed in good faith and not by any means forbidden by law.

12. <u>Bankruptcy Code § 1129(a)(4)</u>. All payments made or to be made by the Debtors for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to approval of, the Court as reasonable. For the avoidance of doubt, the payment after the Effective Date of fees and expenses of the Plan Administrator shall not require Court approval unless the Examiner has an unresolved objection that needs to be submitted to the Court for resolution.

13. <u>Bankruptcy Code § 1129(a)(5)</u>. The Debtors have disclosed the identity and affiliations of the initial Plan Administrator, he is not an Insider, and the Debtors will have no other officers or directors after the Effective Date.

14. <u>Bankruptcy Code § 1129(a)(6)</u>. Bankruptcy Code § 1129(a)(6) does not apply to the Debtors.

15. <u>Bankruptcy Code § 1129(a)(7)</u>. With respect to each Impaired Class that is not an Empty Class, each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

16. <u>Bankruptcy Code § 1129(a)(8)</u>. Each voting Class under the Plan (i) has accepted the Plan; (ii) is an Empty Class; or (iii) if it has rejected the Plan, the Court finds that pursuant to Bankruptcy Code §§ 1129(b)(1) and (2), the Plan does not discriminate unfairly, and is fair and equitable. Under the circumstances of these Chapter 11 Cases, where a Class is not an Empty Class and no Ballots have been submitted for such Class, such Class is deemed to have accepted the Plan.

17. <u>Bankruptcy Code § 1129(a)(9)</u>. The Plan's treatment of Claims of a kind specified in Bankruptcy Code § 507(a) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

18. <u>Bankruptcy Code § 1129(a)(10)</u>. At least one Class of Impaired Claims under each Separate Plan has voted to accept (or been deemed to accept due to the absence of votes) such Separate Plan, without including acceptances of the Plan by any Insider. For the purposes of determining acceptance and as set forth in the Plan, the votes of Class 1 and Class 2 have been combined.

19. <u>Bankruptcy Code § 1129(a)(11)</u>. Bankruptcy Code § 1129(a)(11) does not apply because the Plan is a liquidating plan.

20. <u>Bankruptcy Code § 1129(a)(12)</u>. The Plan provides for the payment of all US Trustee Fees as they come due.

21. <u>Other Provisions of Bankruptcy Code § 1129(a)</u>. Bankruptcy Code §§ 1129(a)(13), (a)(14), (a)(15), and (a)(16) do not apply to the Debtors.

22. <u>Bankruptcy Code § 1129(b)</u>. With respect to any Class under any Separate Plan that is not an Empty Class and that has not accepted (or not been deemed to accept) such Separate Plan, such Separate Plan is fair and equitable.

23. <u>Bankruptcy Code § 1129(c)</u>. The Court is confirming only a single Separate Plan for each Debtor.

24. <u>Bankruptcy Code § 1129(d)</u>. The principal purpose of the Plan is not the avoidance of taxes or section 5 of the Securities Act of 1933.

25. <u>Bankruptcy Rule 3016</u>. The Plan identifies the Debtors as the Plan proponents under Bankruptcy Rule 3016(a). The Disclosure Statement was in compliance with Bankruptcy Rule 3016(b). The injunction provisions in the Plan comply with the requirements of Bankruptcy Rule 3016(c).

26. <u>Bankruptcy Rule 3020(c)</u>. This Order includes the information required by Official Form 315 and, therefore, complies with Bankruptcy Rule 3020(c).

27. <u>State Law Requirements</u>. To the extent the releases and related provisions in the Plan are required to be in conformance with applicable Texas law as to the enforceability of such provisions, such provisions are deemed to comply with such law and, in any event, are enforceable as a matter of federal law.

28. <u>Lender Settlement.</u> The Disclosure Statement discussion concerning the Lender Settlement, together with the evidence presented at the Confirmation Hearing, satisfies the requirements for seeking approval of the Lender Settlement pursuant to Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the Lender Settlement is in the best interests of the Debtors' estates and otherwise satisfies the standards of Bankruptcy Rule 9019. Therefore, the Lender Settlement is approved.

29. Proposed Su Parties Settlement. The Debtors have informed the Court that the Proposed Su Parties Settlement was not accepted by the Su Parties and, therefore, has been withdrawn.

30. Preserved Causes of Action. Section 6.08 of the Plan sets forth the Preserved Causes of Action and related provisions. All Persons identified in the Preserved Causes of Action by name or by type are put on notice that all Preserved Causes of Action are preserved under the Plan, including without limitation all Debtor Claims against Su Parties.

    This Order and the Plan do not release any claim or Cause of Action held by any Lender against any Su Party. This Order and the Plan do not release the Su Parties' Claims against Lenders or Debtors, except to the extent that such claims have been satisfied or compromised in this Order; provided any claims arising from the F3 Vantage Shares are being satisfied against all parties under paragraph 57.

31. Allocation Settlement. This Court has entered certain orders allocating various payments, expenses, and liabilities on an interim basis but no orders have been entered providing for final allocations. Section 5.06 of the Plan proposes final allocations and the Disclosure Statement discussion concerning such allocations satisfies the requirements for seeking approval of such allocations pursuant to Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the allocations are in the best interests of the Debtors' estates and otherwise satisfy the standards of Bankruptcy Rule 9019. Therefore, the allocations in Section 5.06 of the Plan are approved.

32. Appointment of the Plan Administrator. The Plan provides that, as of the Effective Date, (i) the appointment of the Designee shall terminate and (ii) the Plan Administrator shall be appointed as the successor to the Designee and shall serve as the representative of the Debtors' estates pursuant to Bankruptcy Code §§ 1123(b) and 1129(a)(5). The Court approves such appointment.

33. Continuation of Debtors as Debtors-in-Possession. Under the unusual circumstances of these cases, including the role of the Designee prior to the Effective Date and the appointment of the Plan Administrator to serve as the successor to the Designee as of the Effective Date, and pursuant to the authorization in Bankruptcy Code § 1141(b) for the Plan and the Court to vary the normal application of Bankruptcy Code § 1141(b), the Debtors shall continue as debtors-in-possession after the Effective Date. Notwithstanding the occurrence of the Effective Date, the Debtors shall continue to have all of the rights, powers, and duties set forth in Bankruptcy Code § 1107(a), including the legal and corporate standing and right to commence litigation in the name of the Debtors in the Bankruptcy Court and any other relevant court. The Debtors shall be authorized to operate on the basis set forth in the Plan and the Plan Administration Agreement

and shall remain subject to the jurisdiction of the Bankruptcy Court as debtors and debtors-in-possession until their respective Chapter 11 Cases are closed. All references in the Plan and this Order to "the Debtors" after the Effective Date shall be deemed to be references to "the Debtors as administered by the Plan Administrator." As a result of the continuation of the Debtors as debtors-in-possession, the Plan does not create a "grantor trust" within the meaning of Treasury Regulations Section 301.7701-(4)(d), and the Plan Administrator shall not be required to comply with laws and regulations applicable to grantor trusts.

34. RELEASE PROVISIONS FOR THE BENEFIT OF THE FIDUCIARY RELEASE PERSONS.

   (a) The release provisions in Section 10.03 of the Plan are limited to the Fiduciary Release Persons, consisting of the Designee, the Examiner, and each member of the Committee in respect of its service on the Committee, in each case solely in its respective capacity as Designee, Examiner, or Committee member in the Chapter 11 Cases. Such release provisions are incorporated into this Order by reference.

   (b) The exculpation, limitation of liability, and indemnification provisions in Section 10.04 of the Plan are limited to the Fiduciary Release Persons in their capacity as such. Such provisions are incorporated into this Order by reference.

   (c) The injunction provisions in Section 10.05 of the Plan are limited to the Fiduciary Release Persons in their capacity as such. For the avoidance of doubt, the release, exculpation, limitation of liability, and indemnification provisions do not protect Estate Professionals other than the Designee solely in his capacity as Designee.

   (d) With respect to the Designee, nothing in this Order is intended to supersede or modify the release, exculpation, limitation of liability, indemnification, and jurisdiction provisions set forth in ECF 1554.

35. RELEASE PROVISIONS AS BETWEEN THE LENDER RELEASE PERSONS AND THE ESTATE RELEASE PERSONS.

   (a) The release provisions in Section 11.04 of the Plan are consensual as between the Lender Release Persons and the Estate Release Persons, permissible as part of an approved settlement, an essential requirement of the Lender Settlement, consistent with the Court's approval of the Lender Settlement, and appropriately subject to the exceptions in Section 11.06 of the Plan. Such provisions are incorporated into this Order by reference.

(b) The injunction provision in Section 11.05 of the Plan is limited to the Lender Release Persons and the Estate Release Persons with respect to the matters released under Section 11.04 of the Plan. The injunction is permissible as part of an approved settlement, an essential requirement of the Lender Settlement, consistent with the Court's approval of the Lender Settlement, and appropriately subject to the exception in Section 11.06 of the Plan. Such injunction is incorporated into this Order by reference.

36. PROVISIONS FOR THE BENEFIT OF THE PLAN ADMINISTRATOR AND THE EXAMINER.

(a) Section 10.06 sets forth limitation of liability and indemnification provisions for the benefit of the Plan Administrator and, with respect to the performance of her continuing duties after the Effective Date, the Examiner. Such provisions are an essential requirement of the Plan Administrator and the Examiner in connection with their agreement to serve as such, and are appropriately subject to various exceptions, including potential Causes of Action in respect of alleged breaches of fiduciary duties. Such provisions are incorporated into this Order by reference.

(b) The injunction provision in Section 10.07 of the Plan is a "channeling injunction" that is limited to Causes of Action against the Plan Administrator and the Examiner. The injunction is an essential requirement of the Plan Administrator and the Examiner in connection with their agreement to serve as such. Such injunction is incorporated into this Order by reference.

37. Compliance with Fifth Circuit Precedent. The release and related provisions referred to in the preceding paragraphs above are not inconsistent with, and are permissible under, applicable precedent from the United States Court of Appeals for the Fifth Circuit. Accordingly, this Court has the jurisdiction and authority to approve and order all such provisions as to the limited universe of persons that are protected by such provisions. The failure to include and enforce such provisions of the Plan would impair the Debtors' ability to confirm the Plan.

38. Plan Provisions and Plan Administration Agreement Valid and Binding. The terms of the Plan and the Plan Administration Agreement, together with any other documents included in the Plan Supplement, are incorporated by reference into, and are an integral part of, the Plan and this Order. Upon entry of this Order, the Designee and the Plan Administrator shall be authorized, without any further notice, action, or approval, to execute and deliver the Plan Administration Agreement and any other agreements and documents related thereto. The Plan Administration Agreement is fair and reasonable and is not in conflict with any federal or state law. Upon entry of this Order, occurrence of the Effective Date, and execution of the Plan Administration Agreement, each term and provision of the

Plan, the Plan Administration Agreement and other related documents is valid, binding, and enforceable pursuant to its terms.

39. Plan is in Best Interests. Confirmation of the Plan is in the overall best interests of the Debtors, their estates and the holders of Claims and Interests.

40. Findings of Fact and Conclusions of Law. The foregoing findings and conclusions satisfy the requirements of Bankruptcy Rule 7052. All findings of facts shall also be deemed to be conclusions of law hereunder and vice versa. All findings of fact and conclusions of law announced by this Court on the record in connection with confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. Any findings of fact and conclusions of law that include decretal language shall be deemed included in the below decretal paragraphs.

## ORDER

Based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED that:

41. Objections Overruled. All (a) objections that have not been withdrawn, waived, or settled; and any reservation of rights contained therein, and (b) other responses to Confirmation of the Plan that are not addressed by the relief granted herein, are OVERRULED.

42. Confirmation. The Plan at Exhibit A, including each Separate Plan subsumed within the Plan, with the modifications and clarifications embodied in this Order, IS HEREBY CONFIRMED. The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety and shall be fully enforceable under the continuing jurisdiction of this Court in accordance with their terms.

43. Plan Administrator. Without limiting the foregoing, the appointment, identity, roles, responsibilities, duties, standing (in the name of the Debtors), indemnifications, and compensation rights of the Plan Administrator, as set forth in the Plan, the Plan Administration Agreement and this Order, are approved and decreed in their entirety and shall be fully enforceable under the continuing jurisdiction of this Court in accordance with their terms. Without limiting the terms of the Plan and the Plan Administration Agreement, on and after the Effective Date, the Plan Administrator shall have exclusive responsibility for all matters of any kind or nature with respect to any of the Debtors, including, but not limited to, corporate governance and the ability to commence and prosecute Causes of Action, of all Debtors. On and after the Effective Date, the Plan Administrator

shall have all rights and privileges of the Debtors and any party in possession of property or documents of the Debtors.

44. Pre-Effective Date Fees and Expenses of the Plan Administrator. Pursuant to section 3.05(4) of the Plan Administration Agreement, the Plan Administrator shall be entitled to include its reasonable fees and expenses, including, but not limited to, fees and expenses of any attorneys or other professionals, incurred prior to the Effective Date in its invoices for payment out of the Plan Account. All such fees and expenses incurred prior to the Effective Date shall be subject to Examiner review in accordance with section 3.05(3) of the Plan Administration Agreement.

45. Transfer of Accounts. As of the Effective Date, the Designee shall transfer control and signatory authority with respect to the 345 Account to the Plan Administrator, whereupon it will become the Plan Account. Whitney Bank is authorized and directed to treat the Plan Administrator as the control person and signatory with respect to the Plan Account, without requiring that any new account(s) be opened. As of the Effective Date, the Designee shall transfer to the Plan Administrator the Debtors' rights and interests with respect to the Lender Accounts, and each Lender (including a former Lender) where a Lender Account is maintained is authorized and directed to treat the Plan Administrator as the control person and signatory for each such Lender Account.

46. Examiner. The Examiner shall remain in place with the responsibilities and under the terms set forth in Section 6.17 of the Plan and not under the governance of Bankruptcy Code § 1104. All other roles, responsibilities and governance of the Examiner prior to the Effective Date shall terminate on the Effective Date, subject to the right of the Examiner to file and prosecute a final fee application to Final Order for services rendered through the Effective Date. The Examiner's fees and expenses after the Effective Date shall be paid out of the Plan Account as an expense of the Debtors.

47. Binding Effect. The Plan, its provisions (including the Preserved Causes of Action), and this Order shall be, and hereby are, binding upon the Debtors and each holder of an Expense, Claim or Interest, regardless of whether any such Claim or Interest is Impaired under the Plan or the holder of such Claim or Interest has accepted the Plan.

48. BASED ON THE FINDINGS SET FORTH ABOVE, THE COMPROMISES AND SETTLEMENTS EMBODIED IN THE RELEASE, EXCULPATION, LIMITATION OF LIABILITY, INDEMNIFICATION, AND INJUNCTION PROVISIONS PROVIDED IN SECTIONS 10.03, 10.04, 10.05, 10.06, 11.04, AND 11.05 OF THE PLAN, ARE APPROVED AND DECREED.

49. Retention of Jurisdiction; Exception. To the maximum extent permitted by law, this Court shall retain exclusive jurisdiction over the Chapter 11 Cases and to enforce

the terms and provisions of this Order and the Plan (including related documents approved by this Order), including for the purposes provided in Bankruptcy Code §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d). Without limiting the foregoing, and as set forth in Section 6.08(6) of the Plan, this Court shall have original and exclusive jurisdiction over all Preserved Causes of Action to the maximum extent permitted by law, including any Preserved Causes of Action under state law or other applicable non-bankruptcy law. Notwithstanding the foregoing, if this Court concludes it is without jurisdiction over a Preserved Cause of Action, then the Plan Administrator shall be entitled to pursue such Preserved Cause of Action in another court (but not otherwise).

50. Section 6.09 of the Plan. As part of the Lender Settlement, all objections, motions, and other pleadings of the type described in Section 6.09 of the Plan are hereby dismissed with prejudice.

51. Section 6.10 of the Plan. Except to the extent included in the Preserved Causes of Action, all objections, motions, and other pleadings of the type described in Section 6.10 of the Plan are hereby dismissed with prejudice, subject to the exceptions set forth in Section 6.10.

52. Sections 11.02(5) and (6). As part of the Lender Settlement, and without limiting the approval of the Lender Settlement in its entirety, (i) the provisions of Section 11.02(5) of the Plan with respect to the Indemnified Lenders and Indemnification Claims, and (ii) the provisions of Section 11.02(6) of the Plan with respect to the Section 507(b) Claimants, are specifically approved and decreed.

(1) Section 13.05 of the Plan. As part of the Lender Settlement, and without limiting the approval of the Lender Settlement in its entirety, the provisions of Section 13.05 of the Plan are specifically approved and decreed. Bracewell is directed to release the funds in the Escrow Account on the basis set forth in Section 13.05. To the extent reasonably requested by the Debtors, the Lenders and the Su Parties shall cooperate with the Debtors in effecting the provisions of Section 13.05 with respect to sweeping the funds from the relevant Lender Accounts, and the Debtors shall be entitled to seek relief in this Court if any such person does not provide such cooperation.

53. Non-Occurrence of Effective Date. In the event that the Effective Date under the Plan does not occur: (i) this Order shall be vacated; (ii) the Plan shall be null and void in all respects; (iii) no distributions under the Plan shall be made; (iv) the Debtors and holders of Expenses, Claims and Interests shall be restored to the status quo as of the day immediately preceding the Confirmation Date as if this Order had never been entered; (v) any settlement or compromise embodied in the Plan (including the Lender Settlement and the allocation settlement), rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and shall have no

evidentiary effect for any purpose; (vi) the Debtors' obligations with respect to Expenses, Claims, and Interests shall remain unchanged; and (vii) nothing contained in the Plan or this Order shall constitute or be deemed a waiver or release of any Expenses, Claims, or Interests by or against the Debtors or any Person or governmental entity or to prejudice in any manner the rights of the Debtors or any Person or governmental entity in any other or further proceedings involving the Debtors.

54. <u>Reversal</u>. If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

55. <u>Order Non-Severable.</u> The provisions of this Order are non-severable and mutually dependent.

56. <u>Conflict</u>. In the event of an irreconcilable conflict between this Order and the Plan, this Order shall control. In the event of an irreconcilable conflict between the Plan Administration Agreement and the Plan, the Plan Administration Agreement shall control.

57. <u>Compromise Approved on December 12, 2017.</u> As announced by the Committee, F3 Capital, Su and the Su Parties, the following compromise is incorporated into the Plan. The compromise in this paragraph 57 is in full and final satisfaction of F3 Capital's, Su's and the Su Parties' rights arising under the Order Following Remand, including without limitation any F3 Capital ORS Claims and asserted rights with respect to the F3-Vantage Shares. If there is any conflict between the Plan and this Order, this Order controls:

   A. The F3-Vantage Shares, excluding the replacement Vantage Shares purchased by the Debtors pursuant to ECF # 2544, shall be returned to F3 by the Plan Administrator as soon as practicable after the Plan's effective date. The Debtors and F3 Capital are ordered to submit a proposed form of Order directing the release of the shares from the Court's registry and from Raymond James' custody.

   B. F3 Capital is awarded a $1,500,000.00 Allowed F3 Capital ORS Claim arising under § 364(b) (the "Base Claim"). The Base Claim is payable only as follows:

    (i)    The Base Claim will be allocated and become a liability only of Cash Debtors, exclusive of GEC. The allocation will be made by the Plan Administrator in his sole discretion, allocated in such a manner as to maximize the availability of cash for payment to F3 Capital after consideration of the prrioities set forth in this Order. Payment will be subordinated to payment of all other claims arising under § 503 against the Cash Debtors, determined on a Cash-Debtor-by-Cash-Debtor basis.

    (ii)    Payment of the Base Claim will depend on available cash. The timing and priority of any distribution will be pursuant to the Plan, § 5.02(6); § 5.03(8); and 5.04(7) as an F3 Capital ORS Claims Amount. It will not be a breach of this Order or affect the effectiveness of the Plan if, after the allocations and priorities, all or a portion of the $1,500,000.00 is not paid due to the lack of available cash to pay the Base Claim.

    (iii)    Prior to any allocation of cash to the Cash Debtors, the Plan Administrator will be funded with an amount as provided under the Plan.

C. F3 Capital is awarded a $17,400,000 additional F3 Capital ORS Claim under § 364(b) (the "Additional Claim"). The Additional Claim will be payable on a contingent basis as follows:

    (i)    The Additional Claim will be joint and several against all Debtors but be payable solely out of the Net Proceeds of Preserved Causes of Action under the Plan.

    (ii)    100% of the Net Proceeds of Preserved Causes of Action of BMC will be payable to F3.

    (iii)    60% of the Net Proceeds of any other Preserved Causes of Action will be payable to F3. The balance of the Net Proceeds of any other Preserved Causes of Action will be payable to the holders of unsecured claims.

    (iv)    "Net Proceeds" will be all proceeds of litigation minus all of the Debtor's post-confirmation costs of administration, including any professional fees and costs attributable to litigation.

D. 100% of the BMax arbitration is assigned to F3 Capital, which may

prosecute the arbitration for its own benefit in its sole discretion.

E. The Committee, F3 Capital, Su and the Su Parties each waive all rights of appeal of this Order.

F. The agreements approved in this paragraph 57 are effective upon entry of this Order.

58. The 14-day stay of this Order is waived. This Order is effective on entry.

Signed December 12, 2017.

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE